JERRY LAINE v. STATE OF INDIANA.

[No. 472A174.  Filed November 16, 1972.]

*Carl M. Franceschini*, of LaPorte, *Jack Murray*, of Knox, for appellant.

*Theodore L. Sendak*, Attorney General, *Robert F. Colker*, Assistant Attorney General, for appellee.

SHARP, J.—The Defendant-Appellant, Jerry Laine, appealed from a conviction of the offense of accessory after the fact to theft. Appellant was charged by way of indictment returned by the Grand Jury of Starke County, Indiana, and, upon conviction, was sentenced to the State Reformatory for a term of from one to ten years. The jury returned its verdict on October 26, 1971 and the Defendant-Appellant filed his motion to correct errors with certain affidavits of jurors attached on December 9, 1971. Thereafter on December 28, 1971 the State filed a response to the motion to correct errors with supporting affidavits. On January 14, 1972 the trial court overruled the Defendant-Appellant's motion to correct errors, which had been amended. A supplemental motion to correct errors was filed on January 17, 1972. Argument was heard thereon on February 14, 1972 and the trial court overruled the same on February 23, 1972.

The sole question which we must determine here relates to events which occurred during the time that the jury was deliberating and before it returned its verdict. The jury commenced its deliberations at approximately 2:40 P.M. on October 28, 1971 and the events here in question occurred at approximately 11:15 P.M.

The Defendant-Appellant has attached to his motion to correct errors filed on December 9, 1971 the affidavit of four members of the jury in this case. This court renews, with equal vigor, the condemnation of this practice which is found in *Jessop* v. *Werner Transportation Co.* (1970), 147 Ind. App. 408, 261 N.E.2d 598; *Nowling* v. *Akers* (1971), 149 Ind. App. 645, 274 N.E.2d 546 and more

recently in *Lindsey* v. *State* (1972), 282 N.E.2d 854. Our Supreme Court also agrees. See *Wilson* v. *State* (1970), 253 Ind. 585, 255 N.E.2d 817. If the contentions of the Appellant were based solely upon the affidavits of the jurors just referred to we would unhesitatingly affirm the conviction in this case.

However, there is more. On December 20, 1971 the Prosecuting Attorney of Starke County filed his response to the Defendant-Appellant's motion to correct errors and attached to it the affidavit of Matthew Frayne. The pertinent part of that affidavit is as follows:

"1. That he is presently and was, on the 28th day of October, 1971, the Bailiff of the Starke Circuit Court.

2. That on the above date at approximately 11:15 P.M. C.S.T., he observed one Earl Wilson, known to be the foreman of the jury in session in the above captioned cause, leave the jury room and enter into the hallway. Whereupon, Mr. Wilson requested Mr. Frayne to come into the jury room which this affiant did.

3. That upon entering the jury room he was informed by Mr. Wilson that the jury had some questions as to the form of verdicts in the above captioned cause. Whereupon this affiant advised the jury that, if they had questions, he would notify the court and that the court would read all of the instructions to them again. That Mr. Wilson advised that that would be unnecessary and that they only had questions regarding the forms of verdicts at that time. Whereupon Mr. Wilson handed four forms of verdict to this affiant and asked this affiant to read the same and explain the meaning of each.

4. This affiant did read the 'not guilty' verdict first and explained that this would be the form signed if the verdict was 'not guilty.'

5. This affiant then read the form of verdict for 'guilty' and a fine only and explained that this would be the form used if their verdict was 'guilty' and they wished to impose a fine only.

6. That this affiant then read the form of verdict for 'guilty' and providing for a prison sentence and explained that this form of verdict would be signed if the verdict of the jury was 'guilty' and they wished to recommend a sentence of from one to ten years.

7. That this affiant lastly read the form of verdict providing for the prison sentence and fine and explained that this would be the form of verdict signed if they wished to recommend a one to ten year prison sentence and a fine in any amount.

8. Upon which one of the jurors asked this affiant if they found the defendant guilty and recommended a prison sentence, could the court suspend the same or give probation. The affiant replied that this was beyond the scope of his authority, that it was up to the court, and that if the jurors had any further questions he would advise the court of this and the court would further instruct them. Mr. Wilson stated that that would be unnecessary and this affiant then left the jury room.

9. This affiant further states that, during the period of time he was present in the jury room, no deliberations or conversations regarding the guilt or innocence of the defendant took place. That at said time he never made the statement that the judge says you must reach a verdict and if the defendant is found guilty the judge will probably suspend the sentence and give him probation, as alleged in the affidavit of one Earl Wilson."

In oral argument the Prosecuting Attorney explained to this court that in filing the affidavit of Matthew Frayne he was simply attempting to place on the record what the truth was in regard to the Bailiff's conduct in the jury room during deliberations. We find this commendable and consistent with the highest obligation of a Prosecuting Official to seek truth and do justice.

The legal test by which we must examine the conduct of the Bailiff, as reflected in his own affidavit, is set forth by our Supreme Court in *Conrad* v. *Tomlinson* (1972), 258 Ind. 115, 279 N.E.2d 546. For the opinion in the Appellate Court see 270 N.E.2d 879 (1971). The pertinent language is at 279 N.E.2d at page 551 which states:

"When an irregularity such as this occurs harm will be presumed, and if the irregularity is not explained, a reversal of the judgment should follow. However, if an explanation for the alleged misconduct is offered, and if this Court is satisfied that no harm or

prejudice resulted, then the judgment of the trial court will not be disturbed."

During oral argument the Deputy Attorney General conceded that for whatever motive, when the Bailiff read or explained the verdict forms to the jury in the jury room during deliberations that such constituted an irregularity within the Supreme Court's opinion in *Conrad* v. *Tomlinson*.

The affidavit of the Bailiff here provides precisely the kind of record of what transpired in the jury room during liberations that was not provided in the *Conrad* v. *Tomlinson* situation. Under *Conrad* v. *Tomlinson* it will be presumed that such irregularity causes harm if the irregularity is not explained. In this the only explanation boils down to the good intentions of the Bailiff. Such is not enough. Such an unexplained irregularity must result in the reversal of the conviction. We do not question the purity of the motives of the Bailiff or the members of the jury in this case. However, the event occurred at a highly sensitive point in time during the jury's deliberations. There is and there must be certain quality of secular sacredness about the deliberations of the jury. When the Bailiff here read and explained the forms of verdicts to the jury he went beyond his proper function. The reading and explaining of such verdict forms which form and represent a crucial part of the jury's deliberations can only be explained to the jury in open court by the trial judge in the presence of all parties concerned, including in this case the Defendant-Appellant and his counsel.

The sensitiveness and sanctity of jury deliberations are reflected in a great number of cases. In *Searfoss* v. *Grissom* (1927), 85 Ind. App. 691, 155 N.E. 613, the trial judge read a single instruction out of the presence of one party or its counsel. If a judge enters the jury room and has *any* communication with the jury during deliberations, regardless of the content or intent of such

communications, such is reversible error. *Danes* v. *Pearson* (1893), 6 Ind. App. 465, 33 N.E. 976. See also *Jones* v. *Johnson* (1878), 61 Ind. 257.

The sanctity of the jury trial is well reflected in one of the statutes pertaining to the duties of the jury Bailiff. In IC 1971, 34-1-21-4, Ind. Ann. Stat. § 2-2015 (Burns 1968), in pertinent part is it provided:

> "* * * The officer having them under his charge shall not suffer any communications to be made to them or make any himself except to ask them if they have agreed upon a verdict. * * *"

We, therefore, must hold that the conduct of the Bailiff in this case constituted an irregularity which has not been sufficiently explained within the meaning of *Conrad* v. *Tomlinson*. It necessarily follows that the conviction of the Defendant-Appellant should be and hereby is reversed.

This case is therefore reversed and remanded with the instructions to grant the Defendant-Appellant a new trial.

Reversed and Remanded.

Hoffman, C.J. and Staton, J., concur.

NOTE.—Reported at 289 N.E.2d 141.