HERMAN DARRELL WALLACE *v.* STATE OF INDIANA.

[No. 276S56. Filed June 10, 1977. Rehearing denied August 30, 1977.]

*Stephen H. Meyer,* of Schererville, for appellant.

*Theodore L. Sendak,* Attorney General, *Arthur Thaddeus Perry,* Deputy Attorney General, for appellee.

GIVAN, C.J.—Appellant was charged by indictment of first-degree murder. Trial by jury resulted in a verdict of murder in the second-degree. Judgment was rendered sentencing appellant to the Indiana State Prison for not less than 15 nor more than 25 years.

The record discloses the following facts: On September 2, 1974, Patricia Aycock was married to the appellant, Herman Darrell Wallace. However, divorce proceedings had been

filed. On the day in question Patricia Aycock had come to the trailer home of her estranged husband to retrieve some of her personal property. When she entered appellant was speaking to someone on the telephone and made remarks concerning the worth of his wife's life, whereupon she started to leave but was thrown against the wall by her husband.

The appellant then called his lawyer and then called the State Police, telling the police that he was going to kill his wife. At that time the appellant was pointing a gun at Patricia Aycock. Patricia Aycock's father, the decedent in this case, was informed of his daughter's plight in her husband's home and went to her aid. In the meantime, the appellant had laid the gun down and gone into the kitchen part of the trailer. Patricia Aycock had laid the gun on the floor. As Patricia Aycock's father came into the trailer, the appellant again picked up the gun and a confrontation occurred between the appellant and Patricia Aycock's father. The father was unarmed, but instructed his daughter to go into the other part of the trailer and retrieve her personal goods, whereupon the appellant shot his father-in-law. Patricia Aycock ran from the trailer to summon aid and testified she heard further shots after she left the trailer. She later saw her father lying beside the trailer steps, at which time he was dead.

Appellant first claims the trial court erred in overruling the ground in his motion to correct errors that during the deliberations of the jury, the jury foreman asked the bailiff if they could have copies of the instructions, to which the bailiff answered that they could not. It is appellant's position that it was error for the bailiff to undertake to answer such a question, that it should have been relayed to the trial judge and that the jury should have been returned to the court room in the presence of the parties for the answering of the question. The question was presented to the trial court by the affidavit of the foreman of the jury and by his testimony at the hearing on the motion to correct errors. The only reply

given by the State of Indiana to this allegation is that a juror may not impeach his verdict.

The State's proposition of law is correct but not applicable to this particular case. The affidavit of the juror does not question the verdict, but goes to alleged misconduct by the bailiff. We therefore turn to the content of the affidavit and the testimony of the foreman of the jury. The foreman stated that shortly after entering the jury room and choosing him as foreman, it was observed that the list of instructions was quite long and complicated and that it would help if they could have them to read in the jury room. Other members of the jury had served previously in cases and informed the foreman that they would not be permitted to have the written instructions in the jury room, to which he replied that it would not hurt to ask. He summoned the bailiff to the door and asked if they could have written copies of the instructions, to which the bailiff informed them they could not. The foreman also testified that even though the jurors felt the instructions were long and complicated, they nevertheless felt that between the twelve of them they could remember the instructions and could proceed.

There is nothing in either the affidavit or the testimony of the foreman of the jury that they entertained any idea of having the instructions reread to them. From the total evidence presented by the foreman of the jury, it is apparent that many of the jurors knew the correct answer to the question concerning the instructions and that the bailiff merely reaffirmed what other members of the jury had told the foreman. The situation in the case at bar does not rise to the gravity of the situation in the case of *Deming* v. *State*, (1956) 235 Ind. 282, 133 N.E.2d 51 cited by the appellant.

In the *Deming* case the Court first states that technical errors or defects which do not, in the opinion of the Court, prejudice the substantial rights of a defendant present no reversible error. The Court went on to observe however that in the *Deming* case the jury had asked the bailiff a legal

question concerning the possibility of parole of the defendant if they returned a verdict of guilty, and the bailiff undertook to give them a legal answer to the question. The Court observed that this was in fact more than a technical error or defect and was an illegal instruction given by the bailiff to the jury out of the presence of the parties and out of the courtroom.

In the case at bar the question was a simple inquiry concerning which many of the jurors knew the correct answer. The bailiff made no attempt to convey any legal instruction to the jury, nor is there any indication they requested one. We therefore hold under the circumstances of this case, the action of the bailiff in answering the question, although not a standard of excellence for the conduct of a bailiff, does not indicate prejudice to the appellant which would require reversal. We therefore hold the trial court did not err in overruling that portion of the motion to correct errors.

The appellant also raises the question that the jury should have in fact been furnished with copies of the instructions. In so arguing the appellant concedes the holding in *Martin v. State*, (1973) 260 Ind. 490, 296 N.E.2d 793, which case specifically holds that whether or not a jury should receive the written instructions is a matter of law which either has to be changed by the legislature or court rule, and that it is not the type of question which would cause a reversal of a case purely on the refusal of the trial judge to give the jury the written instructions. We continue to agree with the statement in the *Martin* case and hold that no reversible error was committed by the failure to give the jury the instructions in writing.

Appellant next claims the State failed to prove all the necessary elements of the crime charged. Under this assignment of error the appellant groups several related contentions, including his allegation that the verdict and judgment are contrary to law, that they are not sustained by the weight

of the evidence beyond a reasonable doubt and that the evidence showed that the path of the bullet through decedent's body was in such a direction that it would have been impossible for him to have been shot at the time he was squarely facing the appellant, which appellant claims is the testimony of the decedent's daughter. The evidence in the case shows that the decedent and the appellant were in a heated confrontation in the confines of a house trailer. Patricia Aycock testified that her husband shot her father during this confrontation. The jury heard this testimony and was in the best position to make the evaluation thereof. We cannot say that there was an irreconcilable conflict between the testimony of Patricia Aycock and the testimony of the pathologist concerning the path of the bullet in decedent's body. These contentions by the appellant are not made for the purpose of attempting to establish that he did not do the shooting, but for the purpose of demonstrating that he actually shot the decedent in self-defense.

The testimony before the jury was conflicting in this regard. Patricia Aycock testified that appellant shot her father shortly after he entered the trailer. Appellant's version is that the decedent attacked him in the trailer and that all he could think of was decedent's violent temper and how he had seen him kill rabbits in a fit of temper. After hearing this evidence, the jury chose to convict the appellant. This Court will not reweigh the evidence in the case. We hold that there is sufficient evidence in this record to support the verdict of the jury. *Hicks* v. *State,* (1973) 260 Ind. 204, 294 N.E.2d 613.

Appellant next claims the trial court committed error in wrongfully excluding evidence of the decedent's violent nature. The evidence which appellant sought to elicit was that he had observed the decedent kill rabbits in a fit of temper by hammering their heads with a hammer until their eyes popped out, and this had such a traumatic effect upon him that all he could think of when the decedent entered his trailer was that the decedent was going to do the same thing to him.

Kerry Aycock had testified that the rabbits were killed but did not testify as to manner of the killing. Patricia Aycock had testified in a similar fashion.

Patricia Aycock testified that she knew her father killed the rabbits but when asked if she watched him kill them, she said she did not but she was in the house. She was then asked if she heard how he killed them and she said, "Yes, sir." She was then asked how it was done, to which an objection was sustained. The objection was obviously correctly sustained in view of the fact her answer would have been hearsay, since she had already testified she did not witness the killing. Kerry Aycock testified that he remembers that his father slaughtered the rabbits; he remembers he did not object to the rabbits being slaughtered and testified he did not recall the manner in which it was done. Nowhere in the record do we find any ruling by the court specifically excluding direct evidence as to how the rabbits were slaughtered. We therefore hold there is no reversible error in this record on this subject.

The trial court is in all things affirmed.

DeBruler, Hunter, Prentice and Pivarnik, JJ., concur.

NOTE.—Reported at 363 N.E.2d 956.