Jay W. STADER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 2–1082A356.

Court of Appeals of Indiana,
Third District.

Sept. 22, 1983.

Rehearing Denied Nov. 1, 1983.

Susan K. Carpenter, Public Defender of Ind., David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

A jury found appellant Jay W. Stader guilty of confinement while armed with a deadly weapon under Ind.Code § 35–42–3–3 (1982 Burns Supp.). The jury further found that Stader was mentally ill at the time of the crime pursuant to Ind.Code § 35–5–2–3 (Burns 1979 Repl.).[1] As a result, Stader received a seven and one-half year sentence from which he presently appeals.

■ Stader first maintains that the jury verdict was contrary to law because the evidence established that he was insane at the time of the offense. One who raises the defense of insanity in Indiana also bears the burden of proving this defense by a preponderance of the evidence. *See* Ind.Code § 35–41–4–1(b) (Burns 1979 Repl.); *Basham v. State*, (1981) Ind., 422 N.E.2d 1206. The standard for appellate review for this defense was clearly delineated in *Turner v. State*, (1981) Ind., 428 N.E.2d 1244, at 1246, where the Supreme Court of Indiana stated:

"One who has interposed such a defense and failed therein at the trial level has a monumental burden if he seeks to upset the finding of the fact trier on appeal, for he is appealing from a negative finding, and the issue is not whether or not the finding was sustained by the evidence but whether it was contrary to all the evidence and hence contrary to law. It is only where the evidence is without conflict and leads to but one conclusion and the trier of fact has reached an opposite conclusion, that the decision predicated upon such finding will be disturbed as being contrary to law. *Walker v. State*, (1978) 267 Ind. 649, 651, 372 N.E.2d 739, 740."

■ While Stader correctly states this standard of review, the record does not indicate that the verdict was contrary to law. Four psychiatric experts testified concerning Stader's mental state at the time of the crime. Although all four experts

agreed that he was suffering from post-traumatic stress disorder, they were unable to give the jury a uniform opinion as to his sanity at the time of the criminal act. Dr. Caudill stated that:

"I felt he knew the difference between right and wrong. Uh, I felt that he was emotionally overwhelmed at the time. That interfered with his making a clear conforming to the law type of behavior. Uh, I'm waivering on that issue."

Dr. Yarling commented as follows:

"... I could not develope any line of reasoning which would lead me to an opinion that he was at anytime in the past insane, whether it be at that particular time of the alleged incident or at any other time."

Dr. Davis' testimony was that:

"... [I]t is not my opinion or at least I am not willing to state that uh, because of mental disease or defects, specifically uh, post traumatic stress syndrome, that he was unable to determine right from wrong. Uh, I think that the second part of the insanity defense is the question for the jury."

For purposes of the insanity defense, the term "mental disease or defect" has been legislatively defined by Ind.Code § 35–41–3–6(a) (Burns 1979 Repl.):

"A person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he lacked substantial capacity either to appreciate the wrongfulness of the conduct or to conform his conduct to the requirements of law."

Under this standard, the expert testimony clearly supports the jury determination that Stader was not insane at the time of the crime. Because there was evidence to support the jury's decision, its verdict must be sustained. *Taylor v. State*, (1982) Ind., 440 N.E.2d 1109; *Thomas v. State*, (1981) Ind., 420 N.E.2d 1216.

**1.** This statute was repealed effective September 1, 1982, by Acts 1981, P.L. 298 § 10(c). The law was re-enacted substantially verbatim and is presently codified at Ind.Code § 35–36–2–1 *et seq.* (1982 Burns Supp.). Acts 1981, P.L. 298, § 5.

Next, Stader asserts that the trial court erred in denying the ground in his motion to correct errors premised on bailiff misconduct. Prior to jury deliberations, juror John Hirtzel asked the bailiff, John Nicewander, if the jury could have "transcripts of the testimony." Nicewander replied that there were no transcripts. Stader now contends that Nicewander should have relayed this question to the trial judge, and the jury should have been returned to the courtroom in the presence of the parties for the response to the question.

■ The standard for appellate review applicable in such situations was established by the Supreme Court in *Conrad v. Tomlinson,* (1972) 258 Ind. 115, 279 N.E.2d 546. The *Conrad* court held that:

"[a]lthough the preferred procedure in matters such as this is that the Bailiff instruct the jury that they could request to be brought into open court to ask their question, this Court is of the opinion that the failure to follow such procedure does not constitute reversible error unless some harm or prejudice has been suffered by the objecting party. When an irregularity such as this occurs harm will be presumed, and if the irregularity is not explained, a reversal of the judgment should follow. However, if an explanation for the alleged misconduct is offered, and if this Court is satisfied that no harm or prejudice resulted, then the judgment of the trial court will not be disturbed." 258 Ind. at 122–123, 279 N.E.2d at 551.

This standard requiring a presumption of prejudice only applies in cases in which the bailiff gives an answer to a legal question amounting to an illegal instruction. *Wallace v. State,* (1977) 266 Ind. 344, 363 N.E.2d 956. In the *Wallace* case, the jury foreman asked if they could have written copies of the instructions, to which the bailiff replied that they could not. The Supreme Court held:

"In the case at bar the question was a simple inquiry concerning which many of the jurors knew the correct answer. The bailiff made no attempt to convey any legal instruction to the jury, nor is there any indication they requested one. We therefore hold under the circumstances of this case, the action of the bailiff in answering the question, although not a standard of excellence for the conduct of a bailiff, does not indicate prejudice to the appellant which would require reversal. We therefore hold the trial court did not err in overruling that portion of the motion to correct errors." 266 Ind. at 347, 363 N.E.2d at 957.

■ In the case at bar, Hirtzel's request for transcripts is of no greater legal significance than asking for written instructions. While it is not the position of this Court to sanction the bailiff's behavior, no prejudice is present requiring reversal.

Stader's next allegation of error is premised on affidavits executed by two jury members. In reliance on the factual allegations contained in these affidavits, Stader attempts to prove that he has been denied a fair trial.

■ It has long been held in Indiana that affidavits of jurors will not be considered to impeach their verdict. *Wilson v. State,* (1970) 253 Ind. 585, 255 N.E.2d 817; *Jessop v. Werner Transp. Co., Inc.,* (1970) 147 Ind. App. 408, 261 N.E.2d 598. The logic behind this rule is clear and has been repeatedly stated as follows:

"A jury's verdict may not be impeached by testimony of the jurors. Even the slightest consideration of such a practice under these circumstances would create an intolerable situation and no jury verdict would ever be lasting or conclusive." (Citations omitted.) 253 Ind. at 591, 255 N.E.2d at 821.

Being somewhat overzealous, Stader's trial attorney improperly solicited affidavits from two jurors, and his appellate counsel now attempts to base his legal arguments on this information. While Stader will not be prejudiced or penalized by this action, his trial and appellate attorneys are reminded of this Court's strong disapproval of such action. *Jessop, supra.*

■ Next, Stader contends that the trial court erred by strictly prohibiting him

from informing the jury on the procedures to be followed upon a finding of not guilty by reason of insanity or guilty but mentally ill. The Supreme Court of Indiana has consistently held that it is erroneous to inform the jury of the possible penalties which may be imposed upon conviction. *State v. Williams,* (1982) Ind., 430 N.E.2d 756. It is within the sound discretion of the trial court to instruct on the consequences of these verdicts if it deems it appropriate. *Montague v. State,* (1977) 266 Ind. 51, 360 N.E.2d 181; *Lockridge v. State,* (1975) 263 Ind. 678, 338 N.E.2d 275. However, such instruction becomes mandatory in cases where an erroneous view of the applicable law becomes implanted in the minds of jurors. *Dipert v. State,* (1972) 259 Ind. 260, 286 N.E.2d 405.

The record in this case does not indicate that the jury was presented with an incorrect statement regarding post-trial procedures. Therefore, the trial court did not abuse its discretion by refusing to so inform the jury. *Montague, supra; Hall v. State,* (1976) 264 Ind. 448, 346 N.E.2d 584.

Stader further alleges that Ind.Code § 35-5-2-3 is facially unconstitutional under the Sixth and Fourteenth Amendments of the United States Constitution and under Art. 1, §§ 13 and 19 of the Indiana Constitution. This state's Supreme Court has upheld this statute against all constitutional challenges now forwarded by Stader. *See Taylor, supra.*

As a corollary challenge, Stader claims that the Indiana statute governing guilty but mentally ill verdicts is unconstitutional as applied to the facts in his case. Specifically, Stader alleges that the conditions of his incarceration are in violation of his due process and equal protection rights, and have resulted in treatment amounting to cruel and unusual punishment. These arguments are premised on the fact that Stader is not presently receiving any form of treatment or psychiatric therapy even though found to be mentally ill. He does not challenge the *legality* of his incarceration, but merely the *conditions* of his detention.

Raising this issue on direct appeal is improper because there is no allegation that the trial court committed reversible error. *Jefferson v. State,* (1980) Ind.App., 399 N.E.2d 816. Where inmates challenge the conditions of their custody, the proper means of doing so is either by writ of mandamus or prohibition or a civil rights action under 42 U.S.C. § 1983. *Jefferson, supra; Pruitt v. Joiner,* (1979) Ind.App., 395 N.E.2d 276. This issue may not be considered on direct appeal.

Stader next alleges that the trial court erred in denying his motion to strike the word "hostage," and in allowing the use of this term throughout his case. He correctly states that the law in Indiana requires evidence which is unduly prejudicial, confusing or misleading to be excluded upon proper objection. *Kiefer v. State,* (1958) 239 Ind. 103, 153 N.E.2d 899.

However, the trial court did not abuse its discretion by allowing the use of this term. The prosecution presented uncontroverted evidence that Stader forcibly confined six persons at gunpoint for the purpose of publicizing his views on the Vietnam War. These persons were not free to go at will. The term "hostage" is defined as: "A person held as a security for the fulfillment of certain terms." *The American Heritage Dictionary of the English Language* (1982). Not only was this term appropriate, but Stader is unable to demonstrate how the application of this word may have caused him prejudice. Any alleged error or defect which does not prejudice the rights of the defendant presents no reversible issue. *Deming v. State,* (1956) 235 Ind. 282, 133 N.E.2d 51.

Stader finally argues that the penalty imposed for the crime of confinement while armed with a deadly weapon is unconstitutional, as it is not proportionate to the nature of the offense. Specifically, he claims that no rational basis exists for increasing the base penalty for confinement from two years to ten years simply because the crime is committed while armed.

Ind. Const., Art. 1, § 16 provides that "[a]ll penalties shall be proportioned to the nature of the offense." Indiana sentencing provisions are entitled to a strong presumption of constitutionality and have been upheld under similar attacks in the past. *See Rogers v. State,* (1979) Ind., 396 N.E.2d 348; *Williams v. State,* (1979) Ind., 395 N.E.2d 239. It is only when a criminal penalty is not graduated and proportioned to the nature of an offense, or where it is grossly and unquestionably excessive that this provision applies. *Hollars v. State,* (1972) 259 Ind. 229, 286 N.E.2d 166.

Clearly, this difference in presumptive sentencing is justified by the inherent dangerousness presented by an armed perpetrator. The uncontroverted evidence in this case indicates that Stader entered the Muncie Star Newspaper Office, fired a shot into an elevator, disarmed the night guard, and took six hostages at gunpoint. In light of the nature of this offense and the character of the offender, Stader's sentence of seven and one-half years is anything but manifestly unreasonable.

For all of the above stated reasons, the judgment of the trial court is affirmed.

Affirmed.

BUCHANAN, C.J., and SHIELDS, J., concur.