**STATE of Indiana, Appellant–Respondent,**

v.

**Arnold WINTERS, Appellee–Petitioner.**

No. 49A02–9604–PC–248.

Court of Appeals of Indiana.

April 4, 1997.

406

Pamela Carter, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Appellant.

Susan K. Carpenter, Public Defender of Indiana, Janice L. Stevens, Deputy Public Defender, Indianapolis, for Appellee.

## OPINION

KIRSCH, Judge.

The State of Indiana appeals the granting of post-conviction relief to Arnold Winters. We restate the sole issue for review as whether the post-conviction court erroneously vacated Winters' convictions because of its determination that the trial court committed fundamental error by *ex parte* communications with the jury during deliberations and failing to comply with the provisions of IC 34–1–21–6 regarding jury requests for information.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

The facts underlying Winters' convictions were set forth by our supreme court in his direct appeal:

"On the evening of July 23, 1986, Eugene Kee and Melvin McCullough, who were security guards, heard an argument in progress between brothers Jay Winters and Donnie Winters. The officers approached the two and asked them what their problem was. They responded that the officers should not worry about it, that it was between them, at which time the officers asked them to leave the premises.

"Jay then pushed Officer Kee and Kee pushed him back. Jay then hit Kee with his elbow whereupon Kee drew a pistol and a pair of handcuffs and hit appellant in the face with the handcuffs. At that time, Jay and Donnie agreed to leave and began to walk away followed by the officers. However, they again started arguing, and Officer Kee again intervened. They stopped arguing and started to walk away. At this time, appellant, who was a brother to Jay and Donnie, approached from behind the officers, placed a pistol to the back of Kee's head and fired a shot which killed Kee. McCullough drew his pistol and fired a shot.

"Jay and Donnie grabbed McCullough by the arms and disarmed him. In the struggle, however, McCullough managed to jam the mechanism of his pistol. Jay then gained possession of the disabled pistol and attempted to fire it at McCullough but was unable to do so. Jay again grabbed one of McCullough's arms while Donnie held the other arm. Appellant then walked up to McCullough and shot him in the face. McCullough fell backward. He attempted to draw a second pistol which he was carrying strapped to his ankle. Appellant then fired another shot into McCullough's buttocks.

"McCullough stood up and appellant handed a pistol to Jay, and Jay shot

McCullough in the back. McCullough fell to the ground, and Jay walked up to him and shot him in the groin. When McCullough continued to struggle, Jay observed that: "[He] ain't dead yet." One of the brothers then advised him to shoot him in the head like they had shot the other officer. Jay walked up to McCullough and just as he fired, McCullough moved his head to one side and the bullet missed. This apparently was not observed by Jay because he declared McCullough to be dead and left the scene.

"Donnie and appellant went to the apartment of a friend where they stated they had just shot and killed someone, and they needed a ride out of town. Their friend took them to Louisville. During that period, they stated that they had done the shooting and their brother Jay had not participated in the shooting. The facts of the shooting as above recited were testified to by McCullough who survived the attack. However, Dee Antoinette Keller, a 13–year–old girl who witnessed the shooting, stated that she saw appellant fire the shots, that she did not see Jay with a gun, nor did she see him shoot anybody."

*Winters v. State,* 530 N.E.2d 291, 292 (Ind. 1988).

During deliberations, the jury foreman sent a note to the trial court which read:

"Can we the jury, listen to only a portion of the tape recording made during this subject case—(Melvin Mccullough) [*sic* ]

James R. McKnight

Foreman"

*Record* at 108.[1] Neither the judge nor the attorneys received notice of the note. Instead, the bailiff denied the jury's request by writing "no" on the bottom of the noted and initialing it. *Record* at 108.

The jury sent a second request which read:

"To: Judge Alsip 6/10/87

Can we the jury obtain a written definition of the aiding and abetting portion of the Law [*sic* ] as it applys [*sic* ] to this subject case.

James R. McKnight

Foreman"

*Record* at 109. Again, neither the judge nor the attorneys received notice of the jury's request. The Record does not indicate whether there was any response to the request.[2] The jury convicted Winters of murder, attempted murder, and robbery. Our supreme court affirmed those convictions on direct appeal. *Winters,* 530 N.E.2d at 291. Winters sought post-conviction relief on several grounds: (1) denial of his constitutional right to be present during all critical stages of his criminal proceeding; (2) the failure to instruct as to Winters' specific intent to kill in the attempted murder instruction; (3) the violation of his double jeopardy protections; and (4) ineffective assistance of trial and appellate counsel. The post-conviction court agreed with assertions (1)-(3), found them to be fundamental error, vacated all of Winters' convictions, and ordered new trials. The court disagreed with assertion (4) and found that Winters received effective assistance of trial counsel. The court made no finding, however, with respect to the performance of his appellate counsel. The State appeals solely on the basis of the jury communication. Because the State does not challenge the post-conviction relief granted for the attempted murder and robbery convictions, this opinion addresses only the post-conviction relief granted for the murder conviction.

## STANDARD OF REVIEW

When the State appeals the granting of post-conviction relief, the standard of review applicable to negative judgments does not apply. *State v. Lime,* 619 N.E.2d 601, 603 (Ind.Ct.App.1993), *trans. denied* (1994). We review under the standard noted in Ind.Trial Rule 52(A). *Id.* Under that standard, this court will not set aside the findings or judgment unless clearly erroneous, with due regard given to the trial court's ability to judge witness credibility. T.R. 52(A).

---

1. References made to the "Record" represent the record prepared for Winters' direct appeal.

2. The Record also does not indicated who wrote "7:35 pm" on the bottom of the note. *See Record* at 109.

## DISCUSSION AND DECISION

The State asserts that the bailiff's communication with the jury did not amount to reversible error. We disagree.

When a court engages in *ex parte* communications with a jury, an inference of prejudice arises, creating a rebuttable presumption that error has been committed. *Madden v. State*, 656 N.E.2d 524, 526 (Ind. Ct.App.1995), *trans. denied*. This rebuttable presumption of error also exists in cases when a bailiff communicates with the jury outside of the defendant's presence. *Driver v. State*, 594 N.E.2d 488, 493 (Ind.Ct.App. 1992), *trans. denied*. To be reversible error, the bailiff's conduct must prejudice a defendant's substantial rights. *Bartruff v. State*, 528 N.E.2d 110, 120 (Ind.Ct.App.1988), *trans. denied* (1989). Prejudicial conduct usually amounts to the bailiff answering a legal question or providing additional instructions to the jury. *Wallace v. State*, 266 Ind. 344, 346–47, 363 N.E.2d 956, 957 (1977); *Harrison v. State*, 575 N.E.2d 642, 649–50 (Ind.Ct. App.1991); *Stader v. State*, 453 N.E.2d 1032, 1035 (Ind.Ct.App.1983); *Laine v. State*, 154 Ind.App. 81, 85–86, 289 N.E.2d 141, 143–44 (1972).

With respect to *ex parte* communications between court officials and juries, reviewing courts have held that where the *ex parte* communication is only a refusal of a jury's request, the presumption of harm to the defendant was rebutted. *See, e.g., Martin v. State*, 535 N.E.2d 493, 497 (Ind.1989); *Marsillett v. State*, 495 N.E.2d 699, 709 (Ind. 1986); *Kiner v. State*, 643 N.E.2d 950, 955 (Ind.Ct.App.1994). Here, the bailiff simply refused the jury's requests. Due to the nature of the jury's requests, however, we cannot say that the State rebutted the presumption of harm to Winters.

At issue here is the trial court's failure to follow the mandate of IC 34–1–21–6 which provides:

"After the jury have [*sic*] retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys."

This statute sets forth a mandatory procedure for the court to follow when the jury disagrees as to any part of the testimony and when the jury wishes to be informed as to any point of law arising in the case. If either situation arises, the trial court must notify the parties or their attorneys and provide the necessary information in open court.

With respect to the manifestation of jury disagreement, reviewing courts have interpreted this provision to apply usually when there is open and obvious disagreement among jury members. *See, e.g., Survance v. State*, 465 N.E.2d 1076, 1082–83 (Ind.1984) (finding jury request to hear a portion of testimony did not manifest disagreement); *Grayson v. State*, 593 N.E.2d 1200, 1205–06 (Ind.Ct.App.1992) (finding jury's request, "'We need to review Mr. Grayson's testimony from his lawyer[,]'" did not manifest disagreement); *Dowdy v. State*, 672 N.E.2d 948, 953–54 (Ind.Ct.App.1996) (finding jury's request, "Need to review testimony of Mr. Cooley[,]" did not manifest disagreement). We note, however, that juries may manifest disagreement about testimony by requesting to rehear it. *Brownlee v. State*, 555 N.E.2d 505, 508 (Ind.Ct.App.1990). Indeed, we question why a jury that was in agreement as to the testimony at issue would request to rehear it.

In *Brownlee*, the defendant was prosecuted for attempted murder and armed robbery. His alibi defense rested on the testimony of his girlfriend. During deliberations, the jury sent the following note to the court:

"jurors #11 and #12 could not clearly hear certain parts of Stephen Brownlee's girlfriend's taped testimony, the jury requests to again hear the girlfriend's tape recorded testimony."

555 N.E.2d at 507. This court determined that the note was ambiguous; it could have meant that jurors 11 and 12 simply did not hear the testimony, or that jurors 11 and 12 heard something different from the other jurors which gave rise to a disagreement. *Id.* at 508. Given the importance of the testimony and the fact that Brownlee had no

chance to request clarification, we held that the trial court's failure to inform Brownlee of the jury's request was reversible error. *Id.*

▪ Here, the jury's request is similar to the one made by the jury in *Brownlee.* The first note requested to hear "only a portion of the tape recording made during this subject case—(Melvin Mccullough) [*sic* ]." *Record* at 108. As in *Brownlee,* we find that this request is ambiguous; it could represent juror disagreement concerning only a portion of McCullough's testimony, or it could represent juror inability to hear a portion of the testimony. On its face, the note could fairly be interpreted as arising from disagreement concerning McCullough's testimony. McCullough, as the only surviving victim in the encounter between himself and the three Winters brothers, was the State's chief witness. Having the request summarily denied by the bailiff violated Winters' right under IC 34–1–21–6 to be given notice of the jury request and the opportunity to have the testimony replayed in open court.

The mandate of IC 34–1–21–6 is also triggered by jury questions concerning any point of law arising from the case. Here, the second note from the jury sought a "written definition of the aiding and abetting portion of the Law [*sic* ] as it applys [*sic* ] to this subject case." *Record* at 109. Winters asserted self-defense at trial. Although the trial court did not specifically instruct the jury concerning aiding and abetting or accomplice liability, all three brothers were charged and tried together on counts of murder, attempted murder, and robbery. Therefore, because the jury's question in Note 2 concerned a question of law that the jury reasonably interpreted as arising from the facts of the case, the bailiff's actions violated the statute's mandatory provisions.

▪ Although we find the failure to follow the mandate of IC 34–1–21–6 to be reversible error, under the facts of this case, we disagree with the trial court's conclusion that the error was fundamental. A criminal defendant has the right to be present at all stages of a criminal proceeding requiring the presence of the jury. U.S. CONST. amend. VI; IND. CONST. art. 1 Sec. 13. Fundamental error is error so prejudicial to the rights of a defendant that it amounted to a denial of fundamental due process. *Lacey v. State,* 670 N.E.2d 1299, 1302 (Ind.Ct.App. 1996). While denial of a constitutional right may demonstrate fundamental error, such conclusion does not automatically follow. *Foster v. State,* 484 N.E.2d 965, 967 (Ind. 1985); *Johnson v. State,* 555 N.E.2d 1362, 1364 (Ind.Ct.App.1991). When discussing the difference between fundamental error and reversible error, this court stated:

> "The mere fact that error occurred and that it was prejudicial will not suffice.... *Rather[,] the error must be one such that the defendant could not possibly have had a fair trial or such that this court is left with the conviction that the verdict or sentence is clearly wrong or of such dubious validity that justice cannot permit it to stand.*"

*Stewart v. State,* 567 N.E.2d 171, 174 (Ind.Ct. App.1991), *trans. denied.*

Our supreme court has interpreted IC 34–1–21–6 as conferring on a defendant a substantial right to be present when the jury interrupts its deliberations and asks to review evidence. *Powell v. State,* 644 N.E.2d 855, 857–58 (Ind.1994). In *Powell,* however, the supreme court referred to "substantial right" within the context of Ind.Trial Rule 61. *Id.* at 858. In addition, neither this court, nor our supreme court has held that violation of this statute amounts to fundamental error *per se. But cf. Morgan v. State,* 544 N.E.2d 143, 149 (Ind.1989) (noting in dicta that *ex parte* communication may provide a basis for finding fundamental error). Under the facts of this case, the bailiff's actions did not permit the trial court to respond to the jury's notes, one of which reasonably demonstrated disagreement concerning testimony, and the other of which sought clarification as to a legal issue. This prejudiced Winters' rights to a fair trial and constituted reversible error, yet fell short of the blatant violation of basic principles that constitutes fundamental error.

▪ The distinction we draw between reversible and fundamental error is important because of the procedural posture of this case. Winters' convictions were affirmed on

direct appeal. In response to the petition for post-conviction relief, the State claimed that Winters waived the issue of jury communication by failing to raise it on direct appeal. Because the issue was available to Winters on direct appeal, the only way to avoid waiver was to claim fundamental error or ineffective assistance of appellate counsel for failing to raise the issue. With our disposition concerning fundamental error, Winters must rely on ineffective assistance of appellate counsel.

 The standard for establishing ineffective assistance of appellate counsel is identical to that applied to trial counsel. *Robinson v. State,* 634 N.E.2d 765, 766 (Ind. Ct.App.1994), *trans. denied.* To demonstrate such ineffectiveness, the claimant must establish that counsel's performance fell below a wide range of professionally competent representation and that such representation likely prejudiced the outcome of his trial. *Hernandez v. State,* 638 N.E.2d 460, 461 (Ind.Ct.App.1994), *trans. denied.* In attempting to do so, the claimant must overcome, by strong and convincing evidence, the presumption that counsel is effective. *Id.* This court will not speculate on what would have been the most successful approach. *Id.* Factors such as isolated poor strategy, bad tactics, or inexperience do not necessarily amount to ineffective assistance. *Douglas v. State,* 663 N.E.2d 1153, 1154 (Ind.1996).

 Here, we determined that the violation of IC 34-1-21-6 was prejudicial error. Such error also satisfies the second prong of the test for ineffective assistance of counsel; that there was a reasonable probability of counsel's error affecting the outcome of Winters' appeal. In order to establish ineffective assistance, however, Winters must also prove that his appellate counsel's performance was deficient for failing to raise the issue of jury communication on direct appeal. Counsel's performance is considered deficient when it falls below an objective standard of reasonableness. *Malone v. State,* 660 N.E.2d 619, 623 (Ind.Ct.App.1996), *trans. denied.* Reasonableness is to be measured by the prevailing professional norms as applied to the particular facts of the case. *Id.* The post-conviction court addressed Winters' claim

concerning his trial counsel, but did not address the performance of Winters' appellate counsel. Because our decision here is based in part on our decision in *Brownlee,* which had not been decided at the time of Winters' direct appeal, we cannot say as a matter of law that appellate counsel was ineffective. Consequently, we remand to the post-conviction court for the determination of whether the performance of Winters' appellate counsel was deficient.

We reverse the court's finding of fundamental error with respect to the bailiff's conduct and remand for a determination of whether the performance of Winters' appellate counsel was deficient. Because the State does not challenge the post-conviction court's vacation of Winters' convictions for attempted murder and robbery, or its finding that Winters received effective assistance of trial counsel, those determinations are not affected by this decision.

Reversed and remanded.

RUCKER, J., concurs.

FRIEDLANDER, J., concurs in result with separate opinion.

FRIEDLANDER, Judge, concurring in result.

I agree with the majority in all respects except for the discussion concerning the first jury note. In order to trigger the mandatory provisions of IC § 34-1-21-6, a jury request to hear testimony must stem from "a disagreement between [jurors] as to any part of the testimony." I believe that the majority errs in concluding that this requirement may have been met in the instant case.

The jury note stated, "Can we the jury, listen to only a portion of the tape recording made during this subject case". *Record* at 108. There is no indication on the face of the note that the request stemmed from disagreement among jurors. The majority, however, deems the note ambiguous in this regard, and concludes that the request may fairly be interpreted as arising from jury disagreement. I believe that this conclusion is viable only if one accepts the premise that *any* request to hear testimony necessarily

stems from jury disagreement. To the extent the majority embraces this view ("Indeed, we question why a jury that was in agreement as to the testimony at issue would request to rehear it", *Op.* at 409), I disagree.

The applicable provision of IC § 34-1-21-6 does not apply "[u]nless the jury manifests disagreement about the testimony." *Dowdy v. State,* 672 N.E.2d 948, 954 (Ind.Ct.App. 1996) (quoting *Grayson v. State,* 593 N.E.2d 1200, 1206 (Ind.Ct.App.1992)). I believe that the view expressed by the majority constitutes an impermissible judicial revision of the statute. Such an interpretation ignores the condition precedent clearly stated in the statute (manifest disagreement) and instead transforms the statute into one whose mandatory provisions are triggered *whenever* such a request is made.

I concur with the majority's opinion in all other respects.