Bradford BOUYE, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 49S00–9703–CR–201.

Supreme Court of Indiana.

July 20, 1998.

Patricia Caress McMath, Appellate Public Defender, Indianapolis, for Defendant–Appellant.

Jeffrey A. Modisett, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Plaintiff–Appellee.

DICKSON, Justice.

The defendant, Bradford Bouye, was convicted of murder,[1] conspiracy to commit robbery as a class B felony,[2] and carrying a handgun without a license, a class A misdemeanor.[3] He was given consecutive sentences of sixty years for the murder, twenty years for conspiracy to commit robbery, and one year for the handgun violation.

In this direct appeal, the defendant presents five errors: (1) the trial court should have granted a mistrial; (2) the defendant's right to counsel was impaired; (3) the trial court erroneously allowed a witness to read portions of the probable cause affidavit as a prior consistent statement; (4) the trial court committed reversible error when it responded to a note from the jury without informing the defendant or his counsel; and (5) his sentence was unreasonable.

### 1. Mistrial

The defendant contends that he was entitled to a mistrial, alleging that the prosecutor vouched for a particular witness's credibility. To determine whether a mistrial is warranted, we consider whether the improper conduct had a probable persuasive effect on the jury's decision. *Tompkins v. State,* 669 N.E.2d 394, 398 (Ind.1996). A prompt admonishment to the jury to disregard the improper testimony is usually enough to avoid a mistrial. *Carter v. State,* 686 N.E.2d 834, 836 (Ind.1997).

In this case, a codefendant, Teon Witherspoon, accepted a plea bargain and agreed to testify against the defendant. On cross-examination, the defendant questioned Witherspoon about the conditions of his plea agreement, stating that he was "required to cooperate with law enforcement officers and to testify against co-defendants in this case," but asked him if "there [was] any requirement in [the plea] that [his] statements be truthful." Record at 501. The State objected, stating, "There's no question about the fact that he's required to testify truthfully. If he does not then I certainly will move the Court to set aside the plea agreement and that he be tried.... I certainly wouldn't ask a witness to tell anything but the truth." Record at 501–02. The defendant, in the presence of the jury, moved for a mistrial, stating that the prosecutor's comments amounted to the State "personally vouch[ing]" for Witherspoon. Record at

---

1. IND.CODE § 5–42–1–1 (1993).

2. IND.CODE § 35–41–5–2 (1993); IND.CODE § 35–42–5–1 (1993).

3. IND.CODE § 35–47–2–1 (1993); IND.CODE § 35–47–2–23(c) (1993).

502. The State denied doing so and the judge quickly told the jury:

> The plea agreement which you will see does not use the word testifying truthfully .... the word truthful is not in the plea agreement. The jury is now admonished to disregard the statements, any other statements concerning that plea agreement about why the word truthfully is not in there as said by any of the three lawyers who talked, I now tell you that the word truthful or truthfully is not in the plea agreement. So anything, that uh, any of the three lawyers said in argument disregard.

Record at 503–04.

While the defendant is correct that, "[i]t is improper for the prosecutor to make an argument which takes the form of personally vouching for the witness," *Schlomer v. State*, 580 N.E.2d 950, 957 (Ind.1991), the above statements do not amount to the State "personally vouching" for Witherspoon. The State was defensively responding to the implication that it does not require truthful testimony and referred to witnesses in general and the fact that the State would not ask *any* witness to lie. The State never mentioned this witness in particular, unlike *Schlomer*, the case upon which the defendant relies. In *Schlomer*, the State told the jury in closing arguments that one of its witnesses, "got confused," and then told the jury, "I'm not gonna say Detective McGee is ever gonna be a brain surgeon or a rocket scientist, *but I believe Detective McGee when he tell us what happened." Id.* This is very different from the events transpiring in this case. However, even if the State had been personally vouching for the witness, the court quickly admonished the jury to disregard the colloquy between the State and the defendant. The trial court did not err in refusing to grant a mistrial.

### 2. Ineffective Assistance of Counsel

The defendant contends that his right to counsel was violated because he received ineffective assistance of trial counsel when counsel failed to object to Witherspoon's statement that the defendant may have been in Boy's School.

To establish a claim of ineffective assistance of trial counsel, a defendant must show both that his counsel's performance was sufficiently deficient and that prejudice resulted from that deficiency. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699. Because "[t]he object of an ineffectiveness claim is not to grade counsel's performance," the Court instructed that, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

"[A] criminal defendant alleging prejudice must show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180, 189 (1993). In this case, the defendant contends that counsel should have sought a mistrial when Witherspoon (the codefendant-turned-State's witness) testified that, in an earlier incident the night of the murder, the defendant had gone to rob a person who was standing at a phone booth. Witherspoon stated that the defendant did not rob the person because the defendant "said that he knew him from somewhere, Job Corps, Boy's School, somewhere, I don't know exactly...." Record at 385. The defendant contends this was an improper reference to the fact that the defendant had been in Boy's School, a penal institution. The defendant urges that counsel was ineffective for failing to seek a mistrial.

To determine whether a mistrial is warranted, we consider the probable persuasive effect of the alleged error on the jury's decision. *Tompkins v. State*, 669 N.E.2d 394, 398 (Ind.1996). The evidence at trial demonstrated that, in August of 1992, the defendant and three friends planned to commit some robberies and were out driving. The defendant and two of the friends, With-

erspoon and Antonio Collier, initially decided to rob two women, but changed their minds after seeing a little boy with them. The third friend, Katrina Bass, expressed her intention to rob the women notwithstanding the young boy and, armed with a gun, began approaching the two women. At that same time, the thirty-nine year old, mentally-retarded victim in this case, Richard Briles, rode down the street on his bicycle. Bass spoke to Briles, trying to get him to stop, and he refused, riding off. Bass then got into the car with the other men and they followed after Briles, leaving the two women and the little boy alone. The two women testified that they soon heard shots fired, a long pause, and then more shots fired. They looked down the road, but didn't see anything. About a half hour after the shots had been fired, Briles's body was found twisted in his bike by a passer-by. He had been shot in the head at close range.

The defendant, Bass, Collier, and Witherspoon were all charged with murder, conspiracy to commit robbery, and carrying a handgun without a license. At the defendant's trial, Witherspoon testified that, as he was driving up to Briles, the defendant leaned out of the car and started firing at Briles, although none of the shots hit him. As they got closer, they saw that Briles had a crate on the front of his bicycle and it was full of cans. Witherspoon then told the defendant to stop shooting at Briles because "it wasn't nothin' but a can dude ... a can collector." Record at 402. The defendant listened to Witherspoon and "got back in the car and rolled the window up." Record at 402. Although the defendant had stopped shooting, Briles was still pedaling very fast, trying to get away. As the car passed Briles, the defendant again rolled down the window, pointed his gun, said "one to the head," and shot Briles. Record at 404.

The defendant's girlfriend at the time, Deborah Jones, testified that, on the night of the murder, the defendant confessed to her that he had killed Briles by shooting him in the head. The defendant then asked her to tell the police that he was with her. She complied with his request and initially gave a taped statement to this effect. The State introduced a copy of a letter written by the defendant and sent to Jones, in which the defendant asked Jones to continue to lie to the police:

Deborah honey, ... [the policeman] might come over and ask you about what happen. Deborah tell that man that I came over your house about 11:30 pm and I did not go home [until] your daddy got up and I had to go home. What ever you do, don't tell him that you know what happen.

Record at 343. Soon after receiving this letter and following a discussion wherein her mother told her that the police could "lock you up for perjury," Record at 340, Jones recanted her previous statement and gave another taped statement indicating that the defendant had not been with her and that he had confessed to the murder.

Another friend of the defendant's, Anthony Brooks, also testified that the defendant "said somebody was followin' him on a bike or whatever, he got tired of it so he shot him." Record at 540.

With this quantum of evidence, a passing reference that the defendant "knew him from somewhere, Job Corps, Boy's School, somewhere, I don't know exactly," Record at 385, would probably have had a minimal persuasive effect on the jury's decision. Thus, a mistrial would not have been granted. The defendant was not prejudiced and, therefore, has not shown any violation of his right to counsel.

### 3. Prior Consistent Statement

The defendant contends that the trial court erroneously allowed Indianapolis Police Detective Roy West to read Witherspoon's statements, as they appeared in the probable cause affidavit, as evidence of Witherspoon's prior consistent statements.

The murder at issue here occurred on August 19, 1992. Twelve days later, Witherspoon was arrested for a separate, unrelated robbery. Because his car looked similar to the car used in the August 19th murder, he was questioned about it, but denied any knowledge about the events. Following police investigations, Witherspoon was again arrested a month later, this time in connection with the August 19th murder. After

again denying any involvement, Witherspoon was told by Detective West that the police "already had other information." Record at 421. He then changed his story and gave a lengthy statement on October 6th, implicating the defendant in the murder, stating, "I just knew that ... if I didn't come forward somebody was. So I just ... decided to, you know, look out for my best interest at that time." Record at 421.

Almost five months later, Witherspoon pled guilty to conspiracy to commit robbery, carrying a handgun without a license, and assisting a criminal. His plea agreement required him to "cooperate with law enforcement including testifying against codefendants in this cause." Record at 412. His testimony at trial was identical to the statement he gave to the police during his October 6th interrogation.

On cross-examination, the defendant questioned Witherspoon's truthfulness, noting that Witherspoon had initially denied any involvement or knowledge of the events at issue in the defendant's case. In response to his comment that he was looking out for his own best interests with regard to his October 6th statement, Witherspoon was asked if his best interest was to "stay out of jail and take care of your baby and your fiancé," Record at 426, to which Witherspoon replied, "If possible." Record at 427. After this comment, the State immediately indicated that it planned to have Detective West read the portion of the probable cause affidavit containing Witherspoon's October 6, 1992, statement as evidence of Witherspoon's prior consistent statement, claiming that it was "to rebut an express or implied charge of recent fabrication or improper influence or motive and made before the motive to fabricate arose." Record at 434. The defendant objected, stating that the statement was "duplicitous" and had "nothing to do with this case, other than to attempt to further buttress the supposed truth of Mr. Witherspoon's testimony." Record at 521. The

court found that it was admissible because Indiana Evidence Rule 801(d)(1) "contemplates that when credibility is attacked ... the one whose credibility is attacked is entitled to bolster it." Record at 528. The defendant pointed out that:

[O]ne of the requirements to be admissible under that rule is that the motive for fabrication have to arose after the statement was given. If Mr. Witherspoon is lying, the motive to fabricate arose the second those shots were fired. Mr. Witherspoon has always had a motive to fabricate if, in fact, those are fabricated statements. Therefore, that requirement of that rule is not met.

Record at 528–29. The court overruled the objection, responding, "it seems to me that if there's an attack on credibility then the person whose witness is being attacked has the right to counter." Record at 530.[4]

Under the Indiana Rules of Evidence, the October 6 Witherspoon statement would be inadmissible hearsay under Rules 801(c) and 802, unless it falls within the Rule 801(d) express exclusion of certain statements from the definition of hearsay. As applied to the facts of the present case, the 801(d) exclusion would permit the admission of Witherspoon's prior consistent statement only if it is "consistent with [Witherspoon's] testimony, offered to rebut an express or implied charge against [Witherspoon] of recent fabrication or improper influence or motive, and *made before the motive to fabricate arose . ...*" Ind. Evid. Rule 801(d)(1)(B) (emphasis added). Therefore, for the statement to have been excluded from the definition of hearsay and thus admissible, it must have been made *before* Witherspoon's motive to fabricate arose.

■ The defendant clearly challenged Witherspoon's credibility by contending that the October 6 statement was made to conceal or minimize Witherspoon's own involvement in the murders. The defendant argued that

4. Recently, the United States Supreme Court explicitly rejected this rationale, finding that, under Federal Rule 801(d)(1)(B), "Prior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited." *Tome v. United States*, 513 U.S. 150, 157, 115 S.Ct. 696, 700, 130 L.Ed.2d 574, 581 (1995). Although we are not bound by decisions interpreting the federal counterpart, we find this reasoning persuasive.

Witherspoon's motive to fabricate arose on the date of the murder, August 19th, and continued *through* the October 6th statement, the plea bargain, and his testimony at trial. Thus, Witherspoon's October 6 statement was made *after* his motive to fabricate arose and, therefore, the statement therefore does not qualify under Rule 801(d)(1) for exclusion from the definition of hearsay evidence. Accordingly, the trial court erred in admitting Witherspoon's October 6 statement as a prior consistent statement. *See also* *Thompson v. State*, 690 N.E.2d 224, 232 n. 8 (Ind.1997) (noting that admission of a prior consistent statement under 801(d)(1)(B) was arguably improper because the prior consistent statement essentially admitting to an accomplice role in murders was not made before the witness's motive to fabricate arose as "[the witness] had every reason to shift culpability to [the defendant] while minimizing his own involvement.").

However, evidence which has been improperly admitted under Indiana Evidence Rule 801(d)(1)(B) will not give rise to a new trial if its "probable impact on the jury, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." *Brown v. State*, 671 N.E.2d 401, 408 (Ind.1996). *See also* Ind.Evidence Rule 103(a); Ind.Trial Rule 61. In this case, the State's witness was permitted to read Witherspoon's prior consistent statement as it appeared in the probable cause affidavit:

> Brad [the defendant] fired the first shot. The man on the bike turned the corner, headed back towards Tenth Street, and as he turned the corner, he was really riding the bike fast, that's when a second shot was fired and two more shots were fired in the course of going down the street. After the fourth shot was fired, he kind of threw that box off his bike, it landed on the sidewalk by the edge of the yard. Brad set back in the car and said, his words, [expletive deleted], and that's when I sped up to about forty-five miles per hour to pass him, that's when my car gets real quiet, because it's real tuned up. And that's when this guy weaved out towards the front of my car and I had to weave

over and hit the curb on my side of the car and kind of nicked him and he kind of lost control of the bike going by the parked cars. Brad says one to the head, and fired out the window, I look in my rear view mirror and he falls, looked like it was hard. Brad said, man get out of here.

Record at 565–66. When this was read, the jury had already received a copy of the letter the defendant wrote to his girlfriend, in which he wrote:

> Deborah honey I'm going to wright down what Teon [Witherspoon] said. Brad [the defendant] fired the first shot. The man on the bike turned the corner headed back towards 10th Street and as he turned the corner he was really riding the bike fast, that's when a second shot was fired and two more shot[s] were fired. Brad set back in the car and said [expletive deleted] and that's when I sped up to about 45 miles per hour to pass him. That's when my car gets real quiet because it's real tuned up and that when this guy weaved out towards the front of my car and I had to weave over and hit the curb on my side of the car, and kind of nicked him and he kind of lost control of the bike going by the parked cars. Brad says "one to the head" and fired out the window. The next thing you hear is crushing and I seen him hit the van and I look in my rear view mirror and he falls, look like it was hard. I slowed down and Brad said "man get out of here." Deborah he told the Detective that the gun that he got locked up with was used in the murder.

Record at 343–44. The letter written by the defendant contains the almost identical statements from Witherspoon as those found in the probable cause affidavit. Thus, although the statements in the probable cause affidavit were improperly admitted as prior consistent statements, their admission was merely duplicative of properly admitted evidence. Accordingly, the probable impact on the jury was sufficiently minor so as not to affect the substantial rights of the parties.

### 4. Denial of Jury's Request

The defendant contends that the trial court committed reversible error when it denied

the jury's request for the testimony of the defendant's girlfriend without first informing the defendant or his counsel of the request in open court. The only evidence of this communication is the following note contained in the record of proceedings:

[*handwritten note*]

Deborah's testimony

. . .

[*typewritten response*]

Deborah's testimony—no transcripts are available.

. . .

[signed]
_____
John R. Barney, Jr., Judge
Marion Superior Court
Criminal Division, Room 3

Record at 122.[5]

There are potentially two protections involved in this type of situation: a statutory protection and a common law protection. The defendant contends that both protections are implicated here.

 The statutory protection is found in Indiana Code Section 34–1–21–6, which provides:

After the jury ha[s] retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys.

IND.CODE § 34–1–21–6 (1993). The text of this statute reveals that counsel must be informed of the request and be given the opportunity to be present when the information is given to the jury if, after the jury has begun deliberations, one of two circumstances exist: (1) the jurors disagree as to any part of the testimony; or (2) the jurors desire to be informed as to any point of law arising in the case. We have held that, in these circumstances, the statute "creates in a defendant a substantial right to be present when the jury interrupts its deliberations to review evidence not commended to it by the trial court at the beginning of its deliberations." *Powell v. State,* 644 N.E.2d 855, 858 (Ind.1994). Citing Indiana Trial Rule 61,[6] we held that, because a substantial right has been affected, violation of this statute is not harmless error. *Id.*

 We recognize that there is a split in the Court of Appeals regarding when the statutory protection is triggered. One line holds that, where the jury does not *explicitly* manifest any disagreement about the testimony or does not ask for clarification of a legal issue, the statute does not apply. *See Riggs v. State,* 689 N.E.2d 460 (Ind.Ct.App. 1997); *Johnson v. State,* 674 N.E.2d 180 (Ind.Ct.App.1996); *State v. Chandler,* 673 N.E.2d 482 (Ind.Ct.App.1996); *Jones v. State,* 656 N.E.2d 303 (Ind.Ct.App.1995). The other line holds that, whenever a jury requests that it be given the opportunity to rehear testimony for a second time, the jury is *inherently* expressing disagreement or confusion about that evidence, thus triggering the statute *any* time a jury makes a request for testimony. *See Anglin v. State,* 680 N.E.2d 883 (Ind.Ct.App.1997); *State v. Winters,* 678 N.E.2d 405 (Ind.Ct.App.1997). We find the first line of cases more persuasive. Had the General Assembly intended the statute to cover the broad spectrum encompassed by the second line of cases, the statute could have read, "whenever a jury requests to review any part of the testimony

---

5. We note that there is nothing in the record to indicate when the judge received this note or the procedure used by the judge when he responded to the note. In fact, there is not even a notation in the case chronology sheet indicating that the note was ever received. Nor is there anything in the record indicating that the court did or did not contact the attorneys before responding to the jury's request.

6. "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court or by any of the parties is ground for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Ind.Trial Rule 61.

or evidence." However, rather than adopt this broad approach, the language chosen by the General Assembly indicates its intent to limit its application to those cases in which the jury explicitly indicated a disagreement. In this case, the jury did not give any indication that there was disagreement regarding the testimony. Accordingly, we find that the statute was not implicated.

 However, unlike the statutory protection, the common law protection applies whenever jurors request *any* type of additional guidance from the court, as is the case here. We have repeatedly noted that the proper procedure is for the judge to notify the parties so they may be present in court and informed of the court's proposed response to the jury *before* the judge ever communicates with the jury. *Grey v. State,* 553 N.E.2d 1196, 1197 (Ind.1990); *Morgan v. State,* 544 N.E.2d 143, 149 (Ind.1989); *Moffatt v. State,* 542 N.E.2d 971, 975 (Ind.1989); *Van Martin v. State,* 535 N.E.2d 493, 497 (Ind.1989). When this procedure is not followed, it is an *ex parte* communication and such communications between the judge and the jury without informing the defendant are forbidden. *Marsillett v. State,* 495 N.E.2d 699, 709 (Ind.1986). However, although an *ex parte* communication creates a presumption of error, such presumption is rebuttable and does not constitute *per se* grounds for reversal. *Grey,* 553 N.E.2d at 1198.

 When the trial judge responds to the jury's request by denying it, any inference of prejudice is rebutted and any error is deemed harmless. *Id.* at 1199; *Van Martin,* 535 N.E.2d at 497. In *Grey,* the jury sent the judge a note asking whether the words "made penetration" were in the confession. *Grey,* 553 N.E.2d at 1198. Without informing the defendant of this request, the trial court responded by telling the jury that it could not answer their questions and that they should, "Rely upon your own notes and memory." *Id.* This Court held that any error in not informing the defendant was harmless. *Id.* at 1199.

In *Moffatt,* the jury sent a note requesting several definitions and asked to see the State's exhibits again. The trial court reconvened the jury in open court and answered the first questions by rereading the final jury instructions. The court denied the jury's request to see the exhibits without comment. This Court held that, "no reversible error occurred in appellant's case even if an *ex parte* communication in fact occurred between the jury and trial court. The trial court simply reread the instructions without further comment. The denial of the jury's request to review the exhibits does not result in prejudicial error." *Moffatt,* 542 N.E.2d at 975.

The jury in *Marsillett* asked to hear a replay of part of the transcript. This request was denied by the court. We found that this communication was harmless error, holding, "When the trial judge merely responds to a jury question by denying their request, any inference of prejudice is rebutted and the error, if any, is harmless." *Marsillett,* 495 N.E.2d at 709.

 The defendant acknowledges the above holdings, but contends that, in this case, it is not harmless error because the jury should have received the testimony and the defendant "did not have the opportunity to request that the judge give the jury the testimony it requested, and . . . a review of that testimony could have benefitted [the defendant]." Brief of Appellant at 12. This argument misunderstands the nature of the prohibition against *ex parte* communications. As we have noted:

> [T]he process of jury deliberations is a sensitive point in the trial. Deliberation is the process by which the jury resolves the dispute before it on the basis of the evidence and instructions given in open court. Deliberations are to be free of extraneous influence so this purpose can be fulfilled. When this process is interrupted by an *ex parte* communication, the presumption is that the jury is influenced.

*Smith v. Convenience Store Distrib. Co.,* 583 N.E.2d 735, 738 (Ind.1992). Thus, the danger of an *ex parte* communication is the extraneous influence the judge may have over the jury by his communications. When a judge refuses any communication, the danger of extraneous influence is eradicated. Therefore, contrary to the defendant's argu-

ment, the prohibition against *ex parte* communications is not designed to give the defendant an opportunity to provide the jury with more information that might benefit his case, but rather it is designed to prevent the jury from being improperly influenced by the judge.

The defendant's contention fails.

## Unreasonable Sentence

Although acknowledging that the trial court's sentence was authorized by statute, the defendant contends that it is excessive and seeks modification by this Court. Such a claim is reviewed under Appellate Rule 17(B), which provides that this Court "will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind.Appellate Rule 17(B).

The defendant received a sentence of twenty years for conspiracy to commit robbery.[7] His codefendants were all convicted of conspiracy to commit robbery. Witherspoon pled guilty and received the same sentence as the defendant (twenty years), Collier was sentenced to ten years, and Bass pled guilty and was sentenced to six years.

Citing *Willoughby v. State,* 660 N.E.2d 570 (Ind.1996), the defendant contends that he was "no more culpable than the others as far as the conspiracy to commit robbery is concerned, was in fact was less culpable as he is the one who decided not to rob the women." Brief of Appellant at 13. In *Willoughby,* three defendants were charged with murder and conspiracy to commit murder. One of the codefendant's was sentenced to thirty-five years in exchange for cooperating with the prosecution and the other codefendant was acquitted. At the sentencing hearing, the trial court noted that Willoughby "committed the least amount of acts that directly caused the death," but nonetheless imposed a 110 year sentence. *Willoughby,* 660 N.E.2d at 584. On appeal, this Court found that, under our constitutional proportionality review, we are not required to compare "the sentence in a particular case to sentences of others convicted of the same crime, nor of

similar crimes." *Id.* (citations omitted). However, we found that the enhanced sentence given to Willoughby was excessive. *Id.* We understand this determination to have been made in accordance with our independent Article 7, Section 4 discretionary power to review and revise sentences.

■ The facts in *Willoughby* are different from those in this case. We first note that Witherspoon received the exact same sentence as the defendant. Further, the crime at issue is the conspiracy to commit robbery, which is independent of any completed robbery. Conspiracy to commit robbery is defined as "agree[ing] with another person to commit [robbery] ... [and one of them] performed an overt act in furtherance of the agreement." IND.CODE § 35-41-5-2 (1993). The defendant agreed with Witherspoon, Collier, and Bass to commit robbery. Although the robbery was never completed, all four defendants approached the women carrying handguns, which was the overt act in furtherance of that agreement. As the statute makes clear, the essence of a conspiracy charge is not that the conspirator was the one who actually committed the overt act, but rather that the conspirator agreed with another person that someone would. The facts of this case do not support a sentence revision. *Accord Cooper v. State,* 687 N.E.2d 350, 355 (Ind.1997) (holding that even when "alleged accomplices remain uncharged," it "does not render the imposition of an enhanced sentence manifestly unreasonable").

The defendant's sentence of twenty years on the conspiracy charge—the same sentence Witherspoon received—is not manifestly unreasonable. We decline to revise his sentence.

## Conclusion

The convictions and sentences for murder, conspiracy to commit robbery, and carrying a handgun without a license are affirmed.

SHEPARD, C.J., and SULLIVAN, SELBY, and BOEHM, JJ., concur.

**7.** He also received sentences of sixty years for murder and one year for carrying a handgun without a license, but does not challenge these sentences.