**Robert E. HAMPTON and Labreeska R. Kowalskey, Appellants (Defendants Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 82S00–8712–CR–1106.

Supreme Court of Indiana.

Aug. 15, 1988.

Stephen C. Haas, Evansville, for appellants.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

This is a direct appeal from both Defendant–Appellants' convictions for dealing in cocaine and dealing in a Schedule II controlled substance; Defendant–Appellant Hampton also appeals the habitual offender finding in his case. Defendant–Appellant Kowalskey was sentenced to a term of thirty (30) years imprisonment with the court suspending the last five (5) years of that sentence. Hampton was sentenced to a term of sixty (60) years imprisonment. Three issues are presented for our review in this direct appeal:

1.  trial court error in denying Kowalskey's Motion for a Mistrial based on Officer Davies' testimony that Kowalskey had worked undercover for him in the past;

2.  trial court error in permitting taped testimony of one of the witnesses to be replayed to the jury during their deliberations; and

3.  trial court error in admitting exhibits during the habitual offender portion of the trial.

The facts showed that confidential informant Theresa Hutchcraft Driskell was working with the Evansville Police Department pursuant to a guilty plea and sentencing agreement. On September 5, 1986, Driskell met with Officers Davies and Hirsch to prepare to make drug buys from Hampton and Kowalskey. She was searched, equipped with a radio transmitter, and sent to Hampton and Kowalskey's apartment to buy drugs. She bought cocaine from Hampton and Kowalskey at that time, and also on September 19, 1986, equipped in the same manner, she made a controlled buy of drugs from them. She went to their apartment and bought a pill containing a controlled substance known as Dilaudid.

## I

State's Exhibit I was a tape recording of the September 5, 1986 controlled buy. Officer Davies was on the stand for the purpose of placing the tape recording into evidence and having it played to the jury. The prosecuting attorney questioned Officer Davies about his ability to identify the voices heard on the tape. He asked Davies if he was able to recognize Kowalskey's voice on the tape. Davies testified he was able to identify her voice because he had talked with her before and heard her voice previously on a tape. Among the questions asked Sergeant Davies to substantiate his ability to recognize Kowalskey's voice was the question: "And has Miss Kowalskey worked as a confidential informant for the Evansville Police Narcotics Department?" Sergeant Davies answered "Yes." Kowalskey moved for a mistrial, claiming this testimony was prejudicial in that it inferred to the jury she had a prior criminal record. The State contends there was no further reference to this subject and to conclude the jury would assume from this Kowalskey had a past criminal record is speculative. It is true the jury could infer Kowalskey had been involved in drug transactions in the past; they were presented with the facts that Driskell acted as an undercover agent, pursuant to a plea agreement in which she was convicted of dealing.

However, not all police informants are convicted criminals or in the process of fulfilling plea agreements with the prosecution. There was clear and direct evidence here that Kowalskey was, in fact, dealing in drugs, and the question is whether this single reference so unduly prejudiced her case as to overcome its probative value. It was essential that the voices on the tape be identified for the exhibit to be relevant to the cause and therefore admissible. Officer Davies gave testimony he had talked to her many times before, knew the nickname she went by, and had heard her voice on tape before. The explanation as to the circumstances of these conversations and her voice on tape was relevant and probative. Furthermore, relevant evidence is not rendered inadmissible simply because its

disclosure happens to suggest other criminal activity. *Williams v. State* (1986), Ind., 491 N.E.2d 540, 541; *Samuels v. State* (1978), 267 Ind. 676, 372 N.E.2d 1186, 1188. The question and answer were simply a foundational basis to establish Davies' familiarity with Kowalskey and the trial court did not abuse its discretion to the extent we find reversible error.

## II

During deliberations the jury requested the cassette recording of the September 5, 1986 controlled buy be replayed to them. The jury foreman stated there was some confusion among them about the contents of the tape. The trial judge gave notice to the parties, heard arguments on the jury's request and granted the request to have the tape replayed. Kowalskey and Hampton argue this gave undue weight to that evidence. Our holdings on this issue have been adverse to that position. IC 34-1-21-6 specifically provides that if, after a jury has retired for deliberation, there is a disagreement between them as to any part of the testimony or they desire to be informed as to any point of law arising in the case, they may request that information and it shall be given to them in the presence of or after notice to the parties or their attorneys. In *Brackens v. State* (1985), Ind., 480 N.E.2d 536, 541, this court held it was proper for a trial court to replay parts of testimony or the like upon a jury's request under the circumstances present here. *See also Jarver v. State* (1986), Ind., 492 N.E.2d 285, 286–287; *Douglas v. State* (1982), Ind., 441 N.E.2d 957, 962. The trial court acted properly in this regard.

## III

[3] Finally, Hampton argues State's Exhibits 9, 9A, 10, 11, and 11A, documents pertaining to his 1983 felony conviction for carrying a handgun without a permit, were erroneously admitted into evidence. He claims they did not pertain to a prior "unrelated" felony. Hampton maintains the handgun conviction would have been a misdemeanor were it not for the 1980 burglary

conviction. He reasons that makes the handgun and burglary convictions related, which amounts to using the burglary conviction twice for a sentence enhancement. The same issue was presented to this court in *Woods v. State* (1984), Ind., 471 N.E.2d 691. In *Woods* the trial court first conducted phase I of the trial, wherein the misdemeanor conviction was obtained for carrying a handgun without a valid permit. The trial moved on to phase II, where a prior felony (robbery) conviction was used to enhance the misdemeanor to a felony conviction. Phase III then took place on the habitual offender count, wherein the same robbery conviction was used as an underlying felony. Woods made the same argument that Hampton makes here. We held in *Woods:*

> We believe the clear intent of the legislature is that all persons who have been convicted of two prior felonies are subject to being found to be habitual offenders. In both of the above cited statutes, (I.C. 35–47–2–1 on the handgun violation and I.C. 35–50–2–8 on habitual offender) the defendant's prior conduct places him in a different status. That status is not an additional crime, but merely permits trial courts to enhance a given penalty by reason of the status of the offender. Such enhanced penalty does not constitute double jeopardy. *Hanks v. State,* (1948) [225] Ind. 593, 76 N.E.2d 702; *Hamilton v. State ex rel. Van Natta,* (1975) 163 Ind.App. 342, 323 N.E.2d 659, *appeal dismissed,* 424 U.S. 901, 96 S.Ct. 1092, 47 L.Ed.2d 306 (1976). We find no error in this regard by the trial court.

471 N.E.2d at 693.

We find the trial court acted properly here for the same reasons stated in *Woods.*

The trial court is affirmed.

GIVAN and DICKSON, JJ., concur.

SHEPARD, C.J., and DeBRULER, J., concur in result without opinions.