**Raymond POWELL, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 49S00–9401–CR–5.**

Supreme Court of Indiana.

Dec. 16, 1994.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Jodi Kathryn Rowe, Deputy Atty. Gen., Indianapolis, for appellee.

**DIRECT APPEAL**

SULLIVAN, Justice.

In September of 1992, a jury convicted Raymond Powell in Marion Superior Court of Dealing in Cocaine, a Class A felony,[1] Possession of Cocaine, a Class C felony,[2] and Distributing a Look-alike Substance, a Class C felony.[3] The jury subsequently found Powell to be an Habitual Offender.[4]

Powell was sentenced to thirty years for Dealing in Cocaine and to four years for Dealing in a Look-alike Substance. The conviction for Possession of Cocaine merged with the conviction for Dealing Cocaine. The sentence for Dealing in Cocaine was enhanced by thirty years based on the jury's having found Powell to be an Habitual Offender. The trial court ordered the sentences to be served concurrently for a total sentence of sixty years.

---

1. Ind.Code § 35–48–4–1 (1993). The offense of Dealing in Cocaine is a Class A felony if the amount of cocaine involved weighed three grams or more. Ind.Code § 35–48–4–1(b)(1).

2. Ind.Code § 35–48–4–6 (1993). The offense of Possession of a Cocaine is a Class C felony if the amount of cocaine involved weighed three grams or more. Ind.Code § 35–48–4–6(b)(1).

3. Ind.Code 35–48–4–4.6 (1993).

4. Ind.Code 35–50–2–8 (West Supp.1990).

We have jurisdiction over this direct appeal because the longest single sentence imposed was greater than fifty years.[5]

### Facts

The facts most favorable to sustaining the verdict relate to two incidents. First, on July 23, 1990, DEA Special Agent Thomas Casey received information from Paul Price, an informant, that a certain "Raymond" was distributing cocaine on the east side of Indianapolis. Price provided Special Agent Casey with a pager number and a home telephone number for "Raymond." Special Agent Casey verified that the telephone number was listed to Raymond Powell.

On the following day, Special Agent Casey met with Detectives Steven Swarm and Tom Tudor of the Indianapolis Police Department Narcotics Division, and the three of them met with Paul Price. The police officers decided to set up a controlled buy of one eighth of an ounce of cocaine from "Raymond," using Price as the purchaser. Special Agent Casey paged "Raymond," and when a return call came in, Price answered the call and had a conversation with someone who identified himself as "Raymond."

"Raymond" agreed to meet Price at a hardware store on North Shadeland Avenue in Indianapolis, and to sell Price one-eighth of an ounce of cocaine for two hundred and forty dollars. Special Agent Casey recorded this conversation.

The investigating officers strip-searched Price for controlled substances and weapons, wired Price for sound and, having recorded the banknotes' serial numbers, they gave Price two hundred and forty dollars in buy money.

After the investigating officers had also searched Price's motorcycle for controlled substances and weapons, they followed Price to the rendezvous with "Raymond" at the hardware store. At the hardware store, while the two other officers maintained watch over the parking lot, Detective Swarm followed Price into the hardware store, where

Price paged "Raymond." "Raymond" called back and said he would meet Price in a few minutes. A few minutes later, a 1983 blue Oldsmobile registered to Raymond Powell appeared in the hardware store parking lot; Raymond Powell was driving the car.

Special Agent Casey listened to and recorded the ensuing conversation between Price and Powell. Powell said that he would sell Price a half ounce of cocaine for six hundred and fifty dollars or a full ounce for one thousand three hundred dollars. Powell handed Price a cigarette package; Price gave Powell the two hundred and forty dollars of buy money he had received from Special Agent Casey.

Powell left the area, and Price returned to DEA headquarters followed by the investigating officers. At the DEA headquarters, Price gave the cigarette package to Special Agent Casey and was again strip-searched for controlled substances and weapons.

The cigarette package contained a plastic bag which in turn contained a white substance. DEA laboratory analysis showed that the white substance was 3.35 grams of 43% pure cocaine.

The second incident occurred on November 21, 1990. Special Agent Casey and Detectives Swarm and Tudor again met with Price. They decided to attempt to buy a larger amount of cocaine from Powell. Price was again strip-searched and wired for sound. Price paged Powell, and Powell called back to tell Price to go to the same hardware store and wait for him. This time Price received four hundred and fifty dollars in buy money.

After this second meeting between Price had been arranged, Detectives Swarm and Tudor set up surveillance at Powell's house. At some point in the afternoon, Detective Swarm observed Powell return home in the company of two women and one man.

At eight o'clock that evening, Price paged Powell again, and in the following conversation he told Powell that he would be waiting at a restaurant. Detective Swarm observed

---

5. Ind. Const. art. VII, § 4; Ind.Appellate Rule 4(A)(7); *Wiseman v. State* (1988), Ind., 521 N.E.2d 942, 943.

Powell leave his house together with the man whom Detective Swarm had seen arrive with Powell earlier. Detective Swarm then followed Powell to a parking lot, where Powell parked his car.

It was Powell's companion who then approached Price in the parking lot and identified himself as "Michael" and said that Powell had sent him. Michael then handed Price a package and requested four hundred and fifty dollars. At this point, Powell, who had remained in his car, stepped from his car to watch the transaction. Price gave Michael the money, Michael returned to Powell's car, and Detective Swarm followed Powell's car back to Powell's residence.

At DEA headquarters, Price gave to Special Agent Casey the package Michael had given him in the parking lot. DEA laboratory analysis showed that the package contained 8.16 grams of a substance concocted from Tylenol, aspirin, and caffeine.

During its deliberations, the jury became deadlocked. Through its foreman and the court's bailiff, the jury requested that a tape recorder and three audiotapes of the telephone conversations and the alleged drug transactions be supplied so that it could review this particular evidence in the jury room. Over Powell's objection, the trial court permitted the jury to have the tape recorder and tapes. The jury subsequently convicted Powell of all crimes with which he was charged.

Powell raises a number of issues in this appeal of his convictions, one of which is dispositive: whether it was reversible error for the trial court to supply the jury, after it had begun deliberating, with a tape recorder and the audiotapes of the telephone conversations and the alleged drug deals.

### Discussion

At the outset, we make it clear that this case does *not* concern what materials may be given to a jury *before* it has begun its deliberations. It is well-established precedent in this state that the trial court has considerable discretion in deciding what a jury may appropriately take with it as it begins its deliberations. That discretion is limited by considerations referred to in § 5.1 of the Standards Relating to Trial by Jury (American Bar Association Project on Standards for Criminal Justice), which was adopted by us in *Thomas v. State* (1972), 259 Ind. 537, 289 N.E.2d 508 and which provides:

5.1 Materials to jury room.

(a) the court in its discretion may permit the jury, upon retiring for deliberation, to take to the jury room a copy of the charges against the defendant and exhibits and writings which have been received in evidence, except depositions.

(b) Among the considerations which are appropriate in the exercise of this discretion are:

(i) whether the material will aid the jury in a proper consideration of the case;

(ii) whether any party will be unduly prejudiced by submission of the material; and

(iii) whether the material may be subjected to improper use by the jury.

*Thomas*, 259 Ind. at 540, 289 N.E.2d at 509. *Accord, Smith v. State* (1982), Ind., 437 N.E.2d 975, 976–77, *writ of habeas corpus granted on other grounds, Smith v. Duckworth*, 910 F.2d 1492 (7th Cir.1990); *Jackson v. State* (1980), 274 Ind. 297, 303–04, 411 N.E.2d 609, 613.

Once the jury has begun its deliberations, however, Indiana Code § 34–1–21–6 (1993) governs the procedure to be followed when the jury interrupts its deliberations and asks the trial court to review evidence. *Hampton v. State* (1988), Ind., 526 N.E.2d 1154, 1156; *Brackens v. State* (1985), Ind., 480 N.E.2d 536, 541; *Jarver v. State* (1986), Ind., 492 N.E.2d 285, 286–87; *Douglas v. State* (1982), Ind., 441 N.E.2d 957, 962; *Long v. State* (1981), Ind., 422 N.E.2d 284, 286. Section 34–1–21–6 provides:

After the jury have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, *where the information required*

*shall be given in the presence of, or after notice to, the parties or their attorneys.* (Emphasis added).

Our discussion of this issue in *Hampton,* in which we affirmed a conviction, is worth repeating here:

> During deliberations the jury requested the cassette recording of the September 5, 1986 controlled buy be replayed to them. The trial judge gave notice to the parties, heard arguments on the jury's request and granted the request to have the tape replayed. Kowalskey and Hampton argue that this gave undue weight to that evidence. Our holdings on this issue have been adverse to that position. IC 34-1-21-6 specifically provides that if, after a jury has retired for deliberation, there is a disagreement between them as to any part of the testimony or they desire to be informed as to any point of law arising in the case, they may request that information and it shall be given to them in the presence of or after notice to the parties or their attorneys. In *Brackens v. State* (1985), Ind., 480 N.E.2d 536, 541, this court held it was proper for a trial court to replay parts of testimony or the like upon a jury's request under the circumstances present here. The trial court acted properly in this regard.

*Hampton,* 526 N.E.2d at 1156 (some citations omitted). *Hampton, Jarver, Douglas, Brackens,* and *Long* all stand for the proposition that under § 34-1-21-6 it is perfectly proper for the trial court to replay for the jury *in open court* either tapes of testimony or tapes that have been admitted into evidence. However, the legislature has apparently made the judgment that once it has retired to deliberate, to permit the jury to review testimony or specific pieces of evidence alone and unguided by the court unacceptably risks that the jury will either give undue weight to that evidence or otherwise misuse it.

We do not disagree with that judgment. Indeed, in *Cape v. State* (1980), 272 Ind. 609,

400 N.E.2d 161, the trial court replayed for the jury in open court portions of trial testimony the jury had requested to review. The defendant was not given an opportunity to be present for the replaying of the testimony, and we held that not giving him that opportunity violated his right, under Article 1, § 13 of the Indiana Constitution, to be present at every stage of the proceedings that required the presence of the jury. *Id.* at 611–12, 400 N.E.2d at 163.

Although the tapes given to the jury in this case were not of trial testimony and therefore the error in giving the jury the tapes was not of constitutional dimension, under § 34-1-21-6 and our *Hampton* decision, which applied § 34-1-21-6 to the replaying of tapes of a controlled drug buy, it was, nevertheless, error to permit the jury to review the tapes on its own. The statute itself creates in a defendant a substantial right to be present when the jury interrupts its deliberations to review evidence not commended to it by the trial court at the beginning of its deliberations.[6] We therefore cannot say that this violation of § 34-1-21-6 did not affect Powell's substantial rights. Ind.Trial Rule 61.

### Conclusion

Accordingly, we reverse Powell's convictions for Dealing in Cocaine, Dealing in a Look-alike Substance, and the finding that Powell is an Habitual Offender.

SHEPARD, C.J., and DeBRULER, GIVAN, and DICKSON, JJ., concur.

---

6. We therefore disapprove *Pollard v. State* (1982), Ind.App., 439 N.E.2d 177, in which the Court of Appeals extended our decisions concerning the discretion of the trial court to supply the jury with materials as it goes out to deliberate to the situation where the jury interrupts its deliberations to request material to review. *See id.* at 186.