Phillip E. SCHLABACH, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 20A05–0507–CR–383.

Court of Appeals of Indiana.

Feb. 13, 2006.

Transfer Denied April 27, 2006.

William J. Cohen, Elizabeth A. Block, Cohen Law Offices, Elkhart, for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Phillip E. Schlabach appeals his convictions for class A felony possession of methamphetamine with intent to deliver and class A misdemeanor possession of marijuana. We reverse and remand for a new trial.

### Issue

The dispositive issue is whether Schlabach is entitled to reversal based on the jury's consideration of a misdemeanor summons without his knowledge.

### Facts and Procedural History[1]

On August 19, 2002, Officer Jeffery Eaton of the Elkhart Police Department saw Schlabach's SUV pull out in front of a truck and nearly cause an accident. Tr. at 41.[2] Officer Eaton initiated a traffic stop for unsafe movement. Upon determining that Schlabach's license was suspended and that he had two outstanding warrants, Officer Eaton arrested him and arranged to have the SUV impounded. During an inventory search of the SUV, Officer Eaton found a package of rolling papers in the front armrest and a black cloth notebook with zippered compartments on the floor behind the passenger's seat. Inside the notebook, Officer Eaton found a small bag containing 9.43 grams of marijuana, two baggies containing two rocks of methamphetamine weighing 26.80 grams, a pill

---

1. We heard oral argument on January 18, 2005. We thank counsel for their excellent presentations.

2. Schlabach submitted separately bound and paginated transcripts for his trial, his sentencing hearing, and his post-conviction hearing. We refer to these transcripts as "Tr.", "Sent. Tr.", and "PCR Tr.", respectively.

bottle containing hydrocodone pills and 1.38 grams of methamphetamine, and a small scale with gram/ounce markings.

The State charged Schlabach with class A felony possession of methamphetamine with intent to deliver and class A misdemeanor possession of marijuana.[3] At trial, the State offered into evidence the notebook found in Schlabach's SUV. Schlabach stated that he had no objection, and the notebook was admitted and published to the jury.[4] On May 19, 2004, the jury found Schlabach guilty on both counts, and the trial court entered judgment on the verdict. Sometime thereafter, the court reporter informed defense counsel William J. Cohen that during deliberations, a juror had found inside the notebook a folded-up summons directed to Schlabach. The summons alleged that on July 17, 2002, Schlabach had violated probation on a prior conviction for class A misdemeanor possession of marijuana. Appellant's App. at 169.

On June 8, 2004, pursuant to Indiana Criminal Rule 16, Schlabach filed a motion to correct error requesting "the court to vacate the judgment on the jury's verdict or to declare a mistrial and grant [him] a

new trial" based on prejudice allegedly resulting from the jury's discovery and consideration of the summons. *Id.* at 166. Attached to the motion was the summons and an affidavit from Cohen stating that he had not seen the summons when he inspected the notebook at trial and that the court reporter had informed him that the jury had seen it and "apparently discussed it during their deliberations." *Id.* at 170.[5] In its response dated June 16, 2004, the State asserted that it had been unaware of the summons's presence in the notebook prior to trial and that juror Wayne Kramer had informed the prosecutor after the trial that he had discovered the summons in the notebook. *Id.* at 172–73. Also on that date, the trial court denied Schlabach's motion to correct error.

On July 23, 2004, Schlabach filed a motion to reconsider, seeking reversal based on our supreme court's holding in *Franklin v. State*, 533 N.E.2d 1195 (Ind.1989). *See id.* at 1196 (reversing defendant's murder conviction where jury found evidence of prior drug conviction inside evidence bag and discussed it during deliberations). On August 9, 2004, the State filed its response. On August 30, 2004, the trial

**3.** The charging information and the chronological case summary indicate that the State also charged Schlabach with class D felony possession of marijuana after previous marijuana conviction and class A misdemeanor driving while license suspended. Appellant's App. at 1, 16. The former charge was not put before the jury, and the latter was ultimately dismissed.

**4.** Neither the notebook nor a copy of its written contents appears in the record before us. Over Schlabach's objection, Elkhart County Prosecutor's Office Chief Investigator William Wargo testified that the notebook was "similar" to drug ledgers that he had observed in his experience. Tr. at 97. State's witness Steven Royce identified his name and "old cell phone number" in the notebook and testified over Schlabach's objection that he uses

methamphetamine. *Id.* at 133. During closing argument, Schlabach described the notebook as follows: "[P]art of it's a grocery list, part of it has some phone numbers, some of it has notes, but we have no idea what those notes mean because nobody came to you, not even Wargo, [. . .] and told you what do these notes mean?" *Id.* at 157. The State described the notebook thusly: · "You've got a drug ledger with names, amounts, dollar amounts all outlined in that ledger and who has it in his possession, this defendant." *Id.* at 165.

**5.** According to Cohen's affidavit, he did not become aware of the summons "until after trial when the court reporter brought it to [his] attention and asked [him] why [he] did not object to it at trial." Appellant's App. at 170.

court heard and denied Schlabach's motion to reconsider.[6] The trial court then sentenced Schlabach to thirty years, with eight years thereof suspended.

On September 28, 2004, Schlabach filed a notice of appeal. On December 9, 2004, pursuant to Indiana Appellate Rule 37, Schlabach filed with this Court a motion requesting a stay of appeal and remand due to "newly discovered evidence consist[ing] of a juror affidavit [from Wayne Kramer] detailing that the jury asked two questions to the court about the misdemeanor summons, which were answered by the court without [Schlabach's] knowledge or consent." *Id.* at 279.[7] The motion states that "all the evidence discovered could not have been discovered in time to move for a motion to correct errors" pursuant to Criminal Rule 16. *Id.* Dated September 29, 2004, Kramer's affidavit states:

A. I was a juror in the above referenced case.

B. During deliberations, the jury did not initially receive any exhibits from the court.

C. During deliberations, we asked the bailiff to ask the Judge if we could receive the exhibits. The exhibits were then sent to us.

D. During deliberations, we reviewed State's Exhibit 1 which was a ledger found in the car the Defendant was in at the time of his arrest.

E. During deliberations, I found a note which was contained inside State's Exhibit 1. A copy of the note is attached hereto as Defendant's Exhibit A.

F. We then had a question as to whether or not we could consider Defendant's Exhibit A in our deliberations since it had not been referred to by either the State of Indiana or the Defendant.

G. We asked the bailiff to ask the Judge if [we] could consider Defendant's Exhibit A.

H. The bailiff reported to us that we could consider Exhibit A.

I. We did consider Defendant's Exhibit A in our deliberations and it was used by us to reach our verdict of guilty against the Defendant.

*Id.* at 285–86. On December 22, 2004, this Court dismissed Schlabach's appeal without prejudice and remanded to allow him to file a petition for post-conviction relief.

**6.** During the hearing, the trial court remarked,

> There's no evidence anywhere in this record that the jury used [the summons] to do anything. The only evidence, as I understand it, is Mr. Kramer said they found it in there and conveyed that to my court reporter which I immediately told counsel the minute that I heard of it. I have no information they used it for anything.
>
> . . . .
>
> That—I'm telling you exactly what happened. Mr. Kramer, some how my court reporter was told and I don't remember the mechanics, but it came to my attention that [the jury] found [the summons] in there.
>
> . . . .
>
> Mr. Kramer made that comment and that was disclosed to counsel. I know nothing about what they used it for or anything other than what I told you.

Sent. Tr. at 8.

**7.** Indiana Appellate Rule 37(A) states in pertinent part, "At any time after the Court on Appeal obtains jurisdiction, any party may file a motion requesting that the appeal be dismissed without prejudice or temporarily stayed and the case remanded to the trial court . . . for further proceedings." Indiana Appellate Rule 37(B) states, "The Court on Appeal may dismiss the appeal without prejudice, and remand the case to the trial court, or remand the case while retaining jurisdiction, with or without limitation on the trial court's authority. Unless the order specifically provides otherwise, the trial court . . . shall obtain unlimited authority on remand."

On January 19, 2005, Schlabach filed a petition for post-conviction relief. On January 31, 2005, the State filed an answer asserting that Schlabach had "waived any defense or claim asserted in his Petition for Post–Conviction Relief which he failed to raise at trial or through a timely appeal[.]" *Id.* at 237. On April 14, 2005, the court held a hearing on Schlabach's petition. Kramer testified that the jury had asked the bailiff to ask the trial court whether the jury "would be permitted to consider [the summons] as evidence since it was part of the exhibit that had been used in evidence during the trial." PCR Tr. at 6. According to Kramer, "[t]he message came back by way of the bailiff to the foreman of the jury that [the jury] could consider the exhibit and its contents as evidence." *Id.* Kramer stated that the jury considered the summons as evidence of the ownership of the notebook. *Id.* at 7. During closing argument, the prosecutor remarked,

> I remember the jury question coming up and it was, as I recall, I think you [the trial judge] attempted to contact Mr. Cohen, he wasn't around. He wasn't available and the court made the decision to go ahead and consider the exhibit which they had every right to do since it was properly admitted into evidence without objection.

*Id.* at 14–15. On June 3, 2005, the court denied Schlabach's petition for post-conviction relief. This appeal ensued.

At oral argument, both Schlabach's counsel and the State reiterated that neither party had been aware before trial that the summons was in the notebook. Schlabach's counsel explained that the State had copied the contents of the notebook pursuant to the trial court's discovery order and that the summons was not included in the State's response. Pursuant to Indiana Trial Rule 26(E), the State had a continuing obligation to supplement its discovery responses.[8] The State never produced the summons. Based on the record before us, then, one may reasonably conclude either that the summons was hidden inside the notebook unbeknownst to both parties when the State offered the notebook into evidence at trial, or that the summons was later placed inside the notebook by an unknown party.

## Discussion and Decision

Schlabach used the *Davis/Hatton* procedure as outlined in Appellate Rule 37 to stay his direct appeal and pursue a petition for post-conviction relief in the trial court. *See State v. Lopez,* 676 N.E.2d 1063, 1069 (Ind.Ct.App.1997) (citing *Davis v. State,* 267 Ind. 152, 368 N.E.2d 1149 (1977), and *Hatton v. State,* 626 N.E.2d 442 (Ind.1993)), *trans. denied.*

> If, after a full evidentiary hearing, the postconviction relief petition is denied, the appeal can be reinstated. Thus, in addition to the issues initially raised in the appeal, the issues litigated in the postconviction relief proceeding ... can also be raised. In this way, even if the trial court denies the postconviction claim ..., a full hearing and record on the issue will be included in the appeal.

*Id.* "Once the petition for postconviction relief is denied after a hearing, and the direct appeal is reinstated, the direct appeal and the appeal of the denial of post-conviction relief are consolidated."

---

**8.** *See* Ind. Trial Rule 26(E)(2) ("A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (a) he knows that the response was incorrect when made, or (b) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.").

*Williams v. State,* 757 N.E.2d 1048, 1058 (Ind.Ct.App.2001), *trans. denied* (2002).

█ The issue Schlabach raises on direct appeal is whether the jury's consideration of the misdemeanor summons without his knowledge is grounds for reversal pursuant to *Franklin v. State,* 533 N.E.2d 1195 (Ind.1989), which he cited in his motion to reconsider. In that case, the State offered into evidence a firearms transaction record in a clear plastic evidence bag. Defense counsel examined the exhibit and stipulated to its admissibility. After the jury convicted Franklin of murder, one of the jurors informed defense counsel that inside the evidence bag was Franklin's fingerprint record, which revealed that he "had been previously convicted and sentenced for a violation of the Indiana Controlled Substances Act." *Id.* at 1196. On direct appeal, Franklin submitted a juror affidavit stating that the jury had found the fingerprint record and discussed it during deliberations. Our supreme court remarked, "Whether the evidence of appellant's prior criminal conviction was deliberately or accidentally placed before the jury is of little moment. The fact remains that improper evidence was submitted to the jury and considered by them without any prior knowledge of such occurrence by appellant." *Id.*

The *Franklin* court then addressed the State's claim of harmless error:

The State argues that this mishap should be considered harmless error due to the overwhelming evidence to support appellant's conviction, citing various Indiana cases where such a ruling was made by this Court. However, the cases cited by the State do not parallel the facts of the case at bar. In the case at bar, the evidence against appellant was entirely circumstantial. There was testimony from two jail inmates that appellant had told them of his participation in the crime. Testimony of this nature is always suspect, but its credibility is left to the determination of the jury.

In a situation of this sort where the jury is required to make their decision on circumstantial evidence and upon the testimony of fellow prisoners as to statements made by appellant while in confinement, it is essential that they not be unduly influenced by evidence which should have been excluded. There is little question that the jury was influenced by an instrument which should never have been presented to them. This "mishap" violated "the fundamental integrity of all that is embraced in the constitutional concept of trial by jury." [*Turner v. Louisiana,* 379 U.S. 466, 472, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), *Osborne v. United States,* 351 F.2d 111 (8th Cir.1965) ].

Under the circumstances, we cannot say that the submission of this evidence for the jury's consideration was harmless.

*Id.* (citation omitted).

Schlabach contends that *Franklin* dictates reversal in this case. We agree. The evidence against Schlabach, although perhaps stronger than that against Franklin, is nevertheless entirely circumstantial, and the summons was particularly prejudicial in that it revealed a prior conviction for marijuana possession. As such, "[t]here is little question that the jury was influenced by an instrument which should never have been presented to them." *Id.*[9]

---

9. In fact, Kramer's affidavit and testimony at the post-conviction hearing establish that there was *no* question that the jury was influenced by the summons. In this case, however, we need not address the State's unsupported assertion that our review of direct

We cannot conclude that the jury's consideration of the summons was harmless.

█ Even if we were to conclude otherwise, we would hold that Schlabach is entitled to relief on his post-conviction claim that the trial court improperly communicated with the jury ex parte. We first address the State's argument that Schlabach's post-conviction claim is procedurally defaulted. "[O]ur supreme court has emphasized that in post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Culvahouse v. State,* 819 N.E.2d 857, 860 (Ind.Ct.App.2004), *trans. denied* (2005). The State argues that Schlabach's post-conviction claim "was known and available for direct appeal because it could have been and should have been raised in a motion to correct error and then as a direct appeal claim." Appellee's Br. at 8. Both Indiana Trial Rule 59(A) and Indiana Criminal Rule 16(A) state that a motion to correct error is not a prerequisite for appeal, except when a party seeks to address newly discovered material evidence "capable of production within thirty (30) days of final judgment which, with reasonable diligence, could not have been discovered and produced at trial[.]" For purposes of Criminal Rule 16, the date of final judgment is the date of sentencing. Ind.Crim. Rule 16(B).[10]

The State points out that Schlabach knew the name of the juror who had discovered the summons in the notebook by June 16, 2004, thanks to its response to his

motion to correct error, and that he was not sentenced until August 30, 2004. The State further observes that Kramer's affidavit is dated September 29, 2004, exactly thirty days after Schlabach's sentencing date. As such, the State claims that Schlabach "obviously had contacted and spoken to [Kramer] and learned not only of the basis of his claim but also of the evidence supporting that claim within thirty days after the entry of final judgment, or, in other words, in time to raise this claim through a timely motion to correct error." Appellee's Br. at 11–12. The State asserts that the claim was known and available to raise on direct appeal and is therefore procedurally defaulted for post-conviction review. *See Bunch v. State,* 778 N.E.2d 1285, 1289 (Ind.2002) ("[C]laims available on direct appeal but not presented are not available for post-conviction review.").

Schlabach responds that he could not have filed a direct appeal on the ex parte communication issue because he did not receive Kramer's affidavit until after the thirty-day limit for filing a motion to correct error had expired. He states that "the dilemma became how to proceed with respect to the ex parte communication issue since [he] had already filed his Notice of Appeal and he did not want to lose any issue which could have been raised in the direct appeal." Appellant's Reply Br. at 2.

We first observe that if the prosecutor and the trial court had disclosed the relevant facts at the hearing on Schlabach's motion to correct error, then Schlabach likely would have been able to raise the ex parte communication issue on direct ap-

appeal claims in *Davis/Hatton* cases is "limited to the evidence contained in the direct appeal record." Appellee's Br. at 13.

**10.** Criminal Rule 16(B) also states that Trial Rule 59 "will apply to criminal proceedings

insofar as applicable and when not in conflict with any specific rule adopted by the Indiana Supreme Court for the conduct of criminal procedure."

peal. In any event, we are reluctant to default an appellant who has sought leave of this Court to use a procedure designed to promote judicial economy and fundamental fairness in criminal proceedings. Indeed, we encourage the use of the *Davis/Hatton* procedure to develop an evidentiary record for issues that with reasonable diligence could not have been discovered before the time for filing a motion to correct error or a notice of appeal has passed. In the real world, a diligent practitioner may not have sufficient time to investigate every potentially meritorious issue that arises after the jury renders its verdict. A fairly lenient approach to scrutinizing alleged procedural defaults under *Davis/Hatton* will not obliterate the distinction between direct appeal and post-conviction proceedings, as the State suggests, but rather will ensure that criminal defendants may preserve and present their claims efficiently and that scarce judicial resources are used effectively.[11] We conclude that Schlabach properly availed himself of the *Davis/Hatton* procedure and now address the merits of his post-conviction claim.

■ Our standard of review is well settled:

The petitioner bears the burden of establishing the grounds for post-conviction relief by a preponderance of the evidence. As such, a petitioner who has been denied post-conviction relief faces a rigorous standard of review. To prevail on appeal, the petitioner must demonstrate that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the trial court. Stated differently, we will disturb a post-conviction court's decision only where the evidence is uncontradicted and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion.

Upon reviewing a petition for post-conviction relief, we may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court, i.e., the sole judge of the evidence and the credibility of the witnesses.

*Culvahouse*, 819 N.E.2d at 860 (citations omitted).

■ Schlabach's claim of an improper ex parte communication is based on Indiana Code Section 34–36–1–6, which states:

If, after the jury retires for deliberation:

(1) there is a disagreement among the jurors as to any part of the testimony; or

(2) the jury desires to be informed as to any point of law arising in the case;

the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

Schlabach asserts that the jury's question whether they could consider the summons found in the notebook was a desire to be informed as to a point of law and that the trial court was therefore required to notify him or his counsel and afford him an opportunity to be present during its response to the jury's query.[12] Schlabach contends that the trial court's failure to do so constitutes reversible error.

To support this contention, Schlabach cites *Bouye v. State*, 699 N.E.2d 620 (Ind.

---

11. At oral argument, the State conceded that it had suffered no prejudice as a result of Schlabach's use of the *Davis/Hatton* procedure.

12. Schlabach challenges only the trial court's response to the jury's question regarding the summons, not the trial court's response to the jury's request to view the exhibits.

1998). In *Bouye,* our supreme court addressed the trial court's denial of "the jury's request for testimony of the defendant's girlfriend without first informing the defendant or his counsel of the request in open court." *Id.* at 627. The *Bouye* court noted that "[t]here are potentially two protections involved in this type of situation: a statutory protection and a common law protection." *Id.* Regarding the statutory protection, the court noted that in the circumstances outlined in Indiana Code Section 34–36–1–6 (then 34–1–21–6), it had held that

> the statute "creates in a defendant a substantial right to be present when the jury interrupts its deliberations to review evidence not commended to it by the trial court at the beginning of its deliberations." *Powell v. State,* 644 N.E.2d 855, 858 (Ind.1994).[13] Citing Indiana Trial Rule 61, we held that, because a substantial right has been affected, violation of this statute is not harmless error. *Id.*

*Id.* (footnote omitted).[14] The court determined that the statute was not implicated in that case, however, because "the jury did not give any indication that there was disagreement regarding the testimony." *Id.* at 628.

As for the common law protection, the *Bouye* court stated:

> [U]nlike the statutory protection, the common law protection applies whenever jurors request *any* type of additional guidance from the court, as is the case here. We have repeatedly noted that the proper procedure is for the judge to notify the parties so they may be present in court and informed of the court's proposed response to the jury before the judge ever communicates with the jury. When this procedure is not followed, it is an *ex parte* communication and such communications between the judge and the jury without informing the defendant are forbidden. However, although an *ex parte* communication creates a presumption of error, such presumption is rebuttable and does not constitute *per se* grounds for reversal.
>
> When the trial judge responds to the jury's request by denying it, any inference of prejudice is rebutted and any error is deemed harmless.

**13.** In *Powell,* the jury became deadlocked and asked for a tape recorder and audiotapes of telephone conversations and alleged drug transactions between the defendant and an informant. "Over Powell's objection, the trial court permitted the jury to have the tape recorder and tapes. The jury subsequently convicted Powell of all crimes with which he was charged." *Powell,* 644 N.E.2d at 857. Our supreme court determined that

> [a]lthough the tapes given to the jury in this case were not of trial testimony and therefore the error in giving the jury the tapes was not of constitutional dimension, ... it was nevertheless error to permit the jury to review the tapes on its own. The statute itself creates in the defendant a substantial right to be present when the jury interrupts its deliberations to review evidence not commended to it by the trial court at the beginning of its deliberations. We there-

fore cannot say that this violation of § 34–1–21–6 did not affect Powell's substantial rights. Ind. Trial Rule 61.

*Id.* at 858 (footnote omitted).

**14.** *See* Ind. Trial Rule 61 ("No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court or by any of the parties is ground for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

*Bouye,* 699 N.E.2d at 628 (citations omitted). The trial court denied the jury's request in Bouye's case, and thus the inference of prejudice was rebutted.

■ We agree with Schlabach that the jury's question whether they could consider the summons was a desire to be informed as to a point of law. *Cf. Hamilton v. State,* 207 Ind. 97, 110, 190 N.E. 870, 875 (1934) (stating that "the admissibility of evidence is a question of law").[15] Pursuant to Indiana Code Section 34–36–1–6, Schlabach had a substantial right to be present during the trial court's response to the jury's question. *See Bouye,* 699 N.E.2d at 627. The violation of that statutory right cannot be considered harmless, especially given that Schlabach would have and could have requested a mistrial based on the jury's discovery and consideration of the summons. *See id.*[16] We also agree that Schlabach's common law rights were violated and that the State did not rebut the resulting presumption of error. Without informing Schlabach, the trial court improperly permitted the jury to consider an inadmissible[17] and highly prejudicial document of which Schlabach was unaware and which the State did not intend to offer into evidence. We therefore reverse Schla-

bach's convictions and remand for a new trial.

Reversed and remanded.

FRIEDLANDER, J., and ROBB, J., concur.

15. We note that prior to deliberations, the trial court instructed the jury as follows: "It is your duty to determine the facts of the case here on trial from the evidence given in court in your presence and to disregard any and all information that you or any of you may have derived from any other source." Appellant's App. at 146 (final instruction 22) (capitalization altered). The trial court also stated, "In determining whether the defendant is guilty or not guilty, you must be governed solely by the evidence received in this trial and the law as stated to you by [the] court." *Id.* at 150 (final instruction 26) (capitalization altered).

16. The State characterizes *Bouye* as "*suggesting* that violations of the statutory right cannot be harmless error, even though violations of the common law right and constitutional

right can be harmless." Appellee's Br. At 6 (emphasis added). We acknowledge that *Bouye* does not specifically so hold, but we may not reinterpret our supreme court's interpretation of its own holding in *Powell.*

17. At oral argument, the State conceded that the summons would have been inadmissible in its unredacted form. The State also abandoned its argument that Schlabach had waived any objection to the summons because he did not object to the admissibility of the notebook. Regardless of whether Schlabach himself knew or should have known that the summons was in the notebook, it was incumbent upon the trial court to inform him that the jury had found the summons and had asked whether it could consider the summons as evidence against him.